## LANNING v. CHICAGO GREAT WESTERN RAILWAY COMPANY et al., Appellants.

### In Banc, June 1, 1906.

1. **REMOVAL OF CAUSES: Diverse Citizenship: Action Against Railroad and Engineer: Federal Decisions.** The plaintiff, a citizen of Misssouri, sued a railroad company, a citizen of another State, and its engineer, a citizen of this State, the cause of action being based solely on the negligence of the engineer, no concurrent negligence on the part of the company being charged, but the negligence charged against the company being the imputed negligence of the engineer. *Held,* that the right of the company to have said suit transferred to the Federal court has been settled adversely to the company by the decisions of the Supreme Court of the United States, holding that such an action is joint, and that the suit is not removable to the Federal court, on the motion of the company, because of the diverse citizenship of it and plaintiff, said decisions being constructions of the Federal statute of 1901 in exactly parallel cases.

2. **NEGLIGENCE: Fellow-Servant: Engineer and Coal Chute Worker.** Two employees of a railroad company who look to separate individuals as the master's representatives for directions in their work, are not fellow-servants. A workman engaged as a part of a crew emptying cars of their coal into bins at a coal chute, and who was injured while engaged in pinching a car with a crowbar, is not a fellow-servant with the engineer on the locomotive which pushed the cars up the incline and caused them to strike against the one at which the crew was working, the crew having its own foreman, from whom plaintiff took his directions, and the engineer working under the directions of the yard-master.

Lanning v. Railroad.

3. ———: Backing Car Onto Coal Dock: Instruction. The engineer in charge of an engine in the track yards backed cars up an incline of a coal dock, striking other cars from which plaintiff and his crew had emptied their coal into the bins, and causing them to move backward and injure plaintiff while he was using his crowbar as a prize to move said cars out of the way, and forcing said crowbar down on plaintiff's leg. There was ample evidence that the engine bell was not rung, nor was any other warning or notice given of the engine's approach. *Held*, that an instruction which permitted plaintiff to recover if the engineer caused the engine to collide with the cars behind which plaintiff was working "without giving any warning or signal that would be reasonably calculated to notify and warn plaintiff of the approach of said engine," was not error.

4. ———: ———: ———: Knowledge. Where the knowledge of the engineer that the crew to which plaintiff belonged was at work on the track was established, an instruction permitting plaintiff to recover if the engineer caused his engine to force other cars back and to collide with the one behind which plaintiff was working and forced it back over plaintiff, without notifying him by bell or signal, is not erroneous, although it says nothing about the engineer's knowledge and although his knowledge is alleged in the petition.

5. ———: ———: Bell and Whistle: Negative Proof. Where none of the crew heard the bell or other warning before the cars were made to collide with the car behind which they were rightfully working, by the backing of an engine in close proximity to them, the argument against negative testimony loses much of its force when it is shown that the foreman and other members of the crew besides plaintiff were knocked down.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

Affirmed.

*Culver & Phillip* for appellants.

(1) The court erred in denying the petition of defendant railway company to remove this case to the circuit court of the United States. (a) Plaintiff's petition upon its face presented a controversy between plaintiff and the defendant railway company which was wholly separable from the controversy between plaintiff

and the defendant Gahagan. The engineer is liable solely because of his personal act in doing the wrong. The defendant company is liable not because it was negligent, but because upon considerations of public policy, it is responsible for the acts of those it employs. And where, as in this case, the cause of action alleged in a complaint against a railroad company and one of its employees is based solely on the alleged negligence of the employee, no concurrent negligence of the company being charged, the cause is removable by the company as involving a separable controversy. Helms v. Railroad, 120 Fed. 389; Warax v. Railroad, 72 Fed. 637; Shaffer v. Union Brick Co., 128 Fed. 97; McIntyre v. Railroad, 131 Fed. 985; Sessions v. Railroad, 134 Fed. 313; Hukill v. Railroad, 72 Fed. 753; Landers v. Felton, 73 Fed. 311; Free v. Tel. Co., 122 Fed. 309; Bryce v. Railroad, 122 Fed. 709; Gustavson v. Railroad, 128 Fed. 85; Parsons v. Wincheel, 59 Mass. 592; Bailey v. Bussing, 37 Conn. 351; Campbell v. Portland Sugar Co., 62 Me. 552; Mulchey v. Methodist Religious Soc., 125 Mass. 487; 13 Enc. Plead. and Prac., 921. (b) Plaintiff and the defendant engineer were fellow-servants; so that while, at common law, the engineer was liable for the injury, the defendant railway company was not responsible. If there is any liability on its part, it is a statutory liability only. R. S. 1889, secs. 2873, 2874, 2875. And where the defendant servant is liable for the wrong complained of at common law, but the defendant railroad company's responsibility, if any, is purely statutory, the controversy is separable. Helms v. Railroad, 120 Fed. 397; Beuttel v. Railroad, 26 Fed. 50. (c) The petition for removal alleged that the engineer Gahagan was fraudulently joined as a defendant in the suit in order to defeat the jurisdiction of the Federal court. If these allegations were true, the case was removable. The trial court evidently held that these allegations were subject to proof in the State court, and denied the petition because no proof was

offered, though the petition was verified. In this the court erred. The rule is that the allegations of the petition must be taken as true; and if the plaintiff desires to controvert them he must do so by plea in the Federal court. Hickman v. Railroad, 151 Mo. 653; Dishon v. Railroad, 133 Fed. 475; Gustavson v. Railroad, 128 Fed. 88; Kelley v. Railroad, 122 Fed. 286; Durkee v. Railroad, 81 Fed. 1; Dow v. Bradstreet Co., 46 Fed. 824. (2) The court erred in giving plaintiff's instruction 1. (a) Plaintiff and defendant Gahagan were fellow-servants. Therefore, the defendant railway company was not liable at common law for plaintiff's injuries resulting from the negligence of Gahagan. Nor is a corporation operating a railroad liable under the "fellow-servant" statute unless the plaintiff sustained the damages "while engaged in the work of operating such railroad." Sec. 2873, R. S. 1899. Whether plaintiff while unloading coal from cars into the bins or while "pinching" a car forward with a crowbar in order to pick up coal on the floor of the dock was "engaged in the work of operating such railroad" is a mixed question of law and fact which the jury had to determine affirmatively before the defendant railway company could be held responsible for the injuries inflicted upon plaintiff by a fellow-servant. Callahan v. Bridge Co., 170 Mo. 496. But plaintiff's instruction 1 predicated a verdict in his favor without requiring the jury to find that plaintiff was engaged in work necessary to the operation of a railroad; and it was therefore erroneous. (b) The instruction directed a verdict for plaintiff if the engineer caused the engine to come in contact with the cars "without giving any warning or signal that would be reasonably calculated to notify and warn the plaintiff of the approach of said engine." In view of the facts in this case this charge was not only technically erroneous, but very prejudicial to both defendants. There is no allegation in the petition that it was the duty of the

engineer to warn plaintiff of the approach of the engine other than by blowing the whistle or ringing the bell. There is not a particle of evidence that the engineer had any other means of warning the plaintiff. (c) The charge of negligence in the petition is that the engineer ran the engine up the incline without any warning, "well knowing, or by the exercise of reasonable care and diligence could have known, that plaintiff was working in and about said cars." It is clear that the engineer was not negligent in failing to give warning of the approach of the engine and plaintiff was not entitled to recover unless the further fact was established that the engineer knew or by the exercise of ordinary care would have known that plaintiff was on the dock in a place of danger. And yet plaintiff's instruction 1 permits him to recover without establishing that fact; and it was therefore erroneous. (3) The court erred in refusing to give the demurrers asked at the close of plaintiff's evidence and at the conclusion of all the testimony. The physical fact is indisputable that an engine could not work up the incline without creating loud exhausts which necessarily continued until it reached the very top, within four or five car lengths of where the plaintiff was. The statement of plaintiff that he did not hear the exhausts of the engine is no evidence whatever that there were none, because it is common knowledge that it was a physical impossiblity for the engine to come up without the exhausts. This court has frequently ruled that there must be substantial evidence to support a verdict; that testimony which is improbable, at war with the physical facts, or contrary to human experience, is equivalent to no evidence, and a verdict based on such evidence will not be permitted to stand. Payne v. Railroad, 136 Mo. 575; Lien v. Railroad, 79 Mo. App. 475; Kelsay v. Railroad, 129 Mo. 362; State v. Detmer, 124 Mo. 435; State v. Bryan, 102 Mo. 624; Lane v. Railroad, 132 Mo. 4; Champagne v. Hamey, 189 Mo. 709.

*Allen & Mayer* for respondent.

(1)    Plaintiff's petition stated a joint cause of action against both defendants, and the case was not removable to the Federal court as involving a separable controversy.    Winston's Admr. v. Railroad, 55 L. R. A. 603; Railroad v. Dixon, 179 U. S. 131; Powers v. Railroad, 169 U. S. 92; Railroad v. Herman, 187 U. S. 63; Torrence v. Shedd, 144 U. S. 527; Railroad v. Wangelin, 132 U. S. 599; Charman v. Railroad, 105 Fed. 449; Riser v. Railroad, 116 Fed. 215; Dougherty v. Railroad, 122 Fed. 202.    (2)    Plaintiff and defendant Gahagan were not fellow-servants.    "Each looked to a different individual as the master's representative for directions in his work, and had no practical connection with the superior who guided and supervised the acts and conduct of the other."    Dixon v. Railroad, 109 Mo. 413.

GANTT, J.—On April 17, 1903, the plaintiff began this action in the circuit court of Buchanan county, Missouri.    The petition in substance states that the defendant is a railroad corporation duly organized and incorporated under the laws of Minnesota and is conducting a railroad business in this State; that the defendant railroad has and owns within its railroad yards in the city of St. Joseph what is known as a coal dock.    That said coal dock is a structure by which coal bins and chutes are erected and placed upon piers or trestle work about twenty feet above the surface of the ground.    That approaching and extending to the surface of said bins and chutes is an elevated incline made of piers and trestle work.    That bins, from one end to the other, cover a space of about one hundred feet in length.    That said incline from the end of the bins to where the same reaches the level of the ground is about three hundred feet; that upon the said incline and trestle work

and by the side of the said coal bins, the defendant maintains a regular railroad track; that defendant by its agents and servants and by means of steam engines pushes carloads of coal up said incline and up the side of the said bins and chutes, and that there the defendant railroad company has a gang of men whose duty it is to empty the coal from said cars to said coal bins and to work around and upon said coal dock. That just at the top of said incline track, about forty feet from said coal bins, said defendant has erected and placed a large block attached to a large hinge which fits over and upon one of the rails of said track and is used for the purpose of stopping and preventing cars that have been pushed upon said dock from running down and along said incline.

It is then alleged that on December 4, 1902, the defendant's agent and servant in charge of one of defendant's engines had pushed three large box cars containing coal up and along said incline track and upon said dock by the side of said coal bins. Plaintiff states that at all the time complained of the defendant John H. Gahagan was the agent and servant of the defendant as a locomotive engineer and was acting in the scope of his employment and agency; that on said day while plaintiff was assisting in pushing said three large cars, which had been emptied, out of the way and along said railroad track on said dock in order to enable plaintiff and those working with him to clean up the coal that had dropped down on the floor of said dock between said cars and bins, and while plaintiff, in the exercise of due care and caution, was prizing one of the back wheels of the rear car of said three cars with a steel crowbar in order to cause said car to move forward, said defendant, John H. Gahagan, in charge of one of defendant's engines, and in the course of his employment by defendant, carelessly, negligently, recklessly and wantonly, without giving any warning or ringing any bell of said engine or blowing the whistle

of said engine or by any other manner or means giving any notice to plaintiff, and while knowing, or by the exercise of reasonable care and diligence could have known, that plaintiff was working in and about said cars, directed and operated and ran said engine up and along said incline and caused it to come into violent contact and collision with said three cars, causing them to move backward and the back wheels of the rear car of said three cars to roll upon the steel crowbar that plaintiff was using, as aforesaid, and causing said crowbar to catch and clinch plaintiff's right foot and leg between said crowbar and the iron rail of the railroad track, and thereby to crush and mangle plaintiff's right foot and leg; that plaintiff did not know that the said defendant Gahagan in charge of said engine was approaching said cars up said incline, and from plaintiff's position could not see or hear the approach of the said defendant Gahagan; that on account of the negligence and carelessness of the said railroad company by its agents and servants aforesaid, and on account of the carelessness and negligence of the said agent and servant of the defendant, John H. Gahagan, plaintiff's right foot was mangled and crushed and had to be amputated and taken off; that by reason of the injuries aforesaid, plaintiff was and is permanently injured by the loss of his right foot; that plaintiff is twenty-seven years old and was of robust health and earning $45 per month; that he has no other business or avocation; that on account of the loss of his said foot, he is incapable of earning a living and will never be able to earn a livelihood for himself; that on account of said injuries, he suffered untold and excruciating physical pain and mental agony, and on account of all the premises he was and is damaged in the sum of twenty-five thousand dollars, for which he prays judgment.

On the second day of the May term, 1903, the defendant railroad company filed its petition to remove said cause to the United States Circuit Court within

and for the St. Joseph Division of the Western Dis-
trict of Missouri, on the ground that the controversy
in said cause was wholly between citizens of different
states, the defendant company being at the time a cor-
poration organized and existing under the laws of Illi-
nois, and the plaintiff being at the time of the com-
mencement of said suit a resident and citizen of the
State of Missouri; that the matter and amount in dis-
pute exceeded, exclusive of interest and costs, the sum
of $2,000; that the time within which the company and
its co-defendant were required by the laws of this state
to answer or plead had not expired; that the contro-
versy between plaintiff and its said co-defendant was
wholly separable from the controversy between plaintiff
and the defendant company and the grounds of action
charged in each of said controversies are based wholly
upon different facts and principles of law; that the
liability of the defendant company is widely different
and distinct from the liability of the defendant com-
pany's co-defendant, the said John H. Gahagan; that
the said John H. Gahagan was and is improperly and
fraudulently joined with the defendant company as a
defendant in said cause by reason of his citizenship in
the State of Missouri, for the sole purpose of defeating
the jurisdiction of the United States Circuit Court with-
in and for said district and division thereof. Defend-
ant at the same time tendered a bond with good and
sufficient security for entering a copy of the record in
said suit in the United States Circuit Court. On the
hearing of said motion, it was conceded by plaintiff that
the bond for removal was good and sufficient, but the
court refused to grant the petition for removal and re-
fused to order the cause removed to the Circuit Court
of the United States. Afterwards on the 28th of Sep-
tember, 1903, the defendant filed an answer which con-
sisted of a general denial and a plea of contributory
negligence on the part of the plaintiff, and, third, an
assumption of the risk of any and all injuries that might

have been caused or occasioned by reason of the facts stated in the petition. The reply was a general denial of all of the new matter set out in the answer.

The cause was tried at the September term, 1903, of the circuit court of Buchanan county and resulted in a verdict for the plaintiff in the sum of five thousand dollars against both defendants. A judgment was rendered accordingly. A motion for new trial was duly filed, heard and overruled and an appeal granted to this court. Three grounds of error are assigned by the defendants for the reversal of the judgment.

I. It is first insisted that the circuit court erred in refusing to remove the case to the Circuit Court of the United States.

Upon this point it is insisted that the plaintiff's petition upon its face presented a controversy between the plaintiff and the defendant railroad company, which was wholly seperable from the controversy between the plaintiff and the defendant Gahagan; that the engineer was liable solely because of his personal act in doing the wrong, and the company was liable because it was responsible for the acts of its agent, and it is earnestly urged that where, as in this case, the cause of action alleged against a railroad company and one of its employees, is based solely on the negligence of the employee, no concurrent negligence of the company being charged, that is to say, no actual negligence on the part of the company as distinguished from imputed negligence, the cause is removable from the state to the federal court under section 2 of the act of March 3, 1887, as corrected August 13, 1888 (1 U. S. R. S. Supp. 611, U. S. Comp. Statutes 1901, page 509), which provides: "And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may re-

move said suit into the Circuit Court of the United States for the proper district." In support of this contention numerous decisions of the federal circuit courts are cited and relied upon, but in our opinion the recent decisions of the Supreme Court of the United States in the cases of Railroad v. Thompson, 26 Sup. Ct. Rep. 161, and Railroad v. Bohon, Admr., 26 Sup. Ct. Rep. 166, have foreclosed further discussion of this question on our part. This being purely a federal question, the judgment of the Supreme Court of the United States must be accepted as final. In Railroad v. Thompson, the case reached the Supreme Court of the United states on a certificate from the United States Circuit Court of Appeals for the Sixth circuit. The Circuit Court of Appeals certified to the Supreme Court the following questions: "May a railroad company corporation be jointly sued with two of its servants, one the conductor and the other the engineer of one of its trains, when it is sought to make the corporation liable only by reason of the negligent act of its said conductor and engineer in the operation of a train under their management and control, and solely upon the ground of the responsibility of a principal for the act of his servants, though not personally present or directing, and not charged with any concurrent act of negligence?" "Is such a suit removable by the corporation, as a separable controversy, when the amount involved exceeds $2,000, exclusive of interest and costs, and the requisite diversity of citizenship exists between the said company and the plaintiff, the citizenship of the individual defendants sued with the company as joint tortfeasors being identical with that of the plaintiff?" To these questions the Supreme Court of the United States returned the following answers: "We answer the first question: That for the purpose of determining the right of removal, the cause of action

must be deemed to be joint. The view herein expressed leads to an answer to the second question in the negative." Mr Justice DAY delivered the opinion of the court and made an exhaustive review of all the cases, and, among other things, said: "As shown in the opinion of the chief justice in the Dixon case, 179 U. S. 131, 45 L. Ed. 121, 21 Sup. Ct. Rep. 67, the cases are in difference as to whether a common-law action can be sustained against master and servant jointly because of the responsibility of the master for the acts of the servant in prosecuting the master's business. In good faith, so far as appears in the record, the plaintiff sought the determination of his rights in the state court by the filing of a declaration in which he alleged a joint cause of action. Does this become a separable controversy within the meaning of the act of Congress because the plaintiff has misconceived his cause of action, and had no right to prosecute the defendants jointly? We think, in the light of the adjudications above cited from this court, it does not. Upon the face of the complaint — the only pleading filed in the case — the action is joint. It may be that the state court will hold it not to be so. It may be (which we are not called upon to decide now) that this court would so determine if the matter shall be presented in a case of which it has jurisdiction. But this does not change the character of the action which the plaintiff has seen fit to bring, nor change an alleged joint cause of action into a separable controversy for the purpose of removal. The case cannot be removed unless it is one which presents a separable controversy wholly between citizens of different states. In determining this question the law looks to the case made in the pleadings, and determines whether the state court shall be required to surrender its jurisdiction to the federal court . . . . The federal courts in some states hold a different rule as to the doctrine of fellow-servants from that administered in the state courts, and in other ways administer

the common law according to their own views. It has not been suggested that a right or removal should arise from such differences. No more has Congress given the right where the state permits the action to be prosecuted jointly which would be held to be several only in the courts of the United States.'' These decisions of the Supreme Court of the United States fully cover all the propositions as to the right of removal, which have been urged by the defendant corporation, and accordingly it must be held that the circuit court committed no error in refusing to remove the cause to the United States circuit court.

II. The next assignment of error is leveled at the first instruction which the court gave for the plaintiff. This instruction in substance required the jury to find that the plaintiff was in the employ of the defendant company, and while acting in the scope of his employment, he was engaged in prizing the rear wheel of the railway car on the coal dock in the railroad yards of the defendant, and that the defendant Gahagan was an engineer in charge of one of the defendant's engines, and while acting in the scope of his employment as such engineer, and without any warning or signal that would be reasonably calculated to warn the plaintiff of the approach of his engine, negligently caused his engine to come in contact and collision with the cars on the dock as mentioned in the evidence and thereby caused the rear wheel of said car to run down the pinchbar in the hands of the plaintiff and thereby caused plaintiff's right foot to be caught and pinched by the pinchbar, and plaintiff's foot to be injured as mentioned in the evidence, then they would find for the plaintiff.

The objection to this instruction is that the plaintiff and the defendant Gahagan were fellow-servants and, therefore, the defendant was not liable for the injuries resulting from the negligence of Gahagan. The

evidence·discloses that the plaintiff was a member of a crew employed by the defendant to work on the dock and handle the coal. Hiram Sellers was the foreman of this crew. This crew had nothing to do with the running of the engine or trains. The defendant Gahagan was an engineer in the employ of the company, in charge of an engine, and worked under the direction of a yardmaster by the name of Botsford. Gahagan had nothing to do. with the dock work except to push cars in on the dock and pull them out with his engine. The foreman of the dock crew had no control whatever over the movement of the company's engines. Plaintiff and defendant Gahagan were thus employed in widely different departments, "each looked to a different individual as the master's representative for directions in his work, and had no practical connection with the superior who guided and supervised the acts and conduct of the other." In Sullivan v. Railroad, 97 Mo. 113, it was held by this court that a trackwalker on the railroad is not a fellow-servant with the locomotive engineer, or fireman of a passenger train, and in Condon v. Railroad, 78 Mo. 567, it was ruled that a car-repairer at a station and a trainman were not fellow-servants within the meaning of the rule that exempts the company from liability to a servant for injuries occasioned by the negligence of another servant. And in Hall v. Railroad, 74 Mo. 298, it was held the section foreman and switchman were not fellow-servants, and in Dickson v. Railroad, 104 Mo. 491, a quarry laborer under orders of a foreman, who had control of the quarry and represented the company there, was not a fellow-servant with the trainmen on a passenger train. In view of these decisions we think that the workmen so distantly related to each other in the service of a common master as plaintiff and Gahagan were, were not fellow-servants within the meaning of the rule which exempts the master from liability for injuries inflicted by a fellow-servant upon a fellow-servant. It would serve no

good purpose to enter upon a general discussion or attempt to enumerate the cases in which employees of a common master are held to be or not to be fellow-servants. In our opinion the reason of the rule forbids its application to the facts in this case, and we think there was no error in the giving of instruction numbered 1 for the plaintiff so far as this objection is concerned.

Nor is there any merit to the other objection to the instruction on the ground that it permitted the plaintiff to recover if the engineer caused the engine to collide with the cars under which plaintiff was working, "without giving any warning or signal that would be reasonably calculated to notify and warn the plaintiff of the approach of said engine." There was ample evidence to the effect that the bell of the engine was not rung, nor any other warning or notice given of the approach of the engine, and the jury were fully justified in finding that the bell was not rung. On behalf of the defendants, the court instructed the jury that if the bell was rung, plaintiff could not recover. The defendants have no cause of complaint on this score.

Again, it is objected that although the petition contained the averment that the engineer "well knowing or by the exercise of reasonable care and diligence could have known that plaintiff was working in and about said cars," yet this instruction permitted plaintiff to recover without requiring him to establish such knowledge on the part of the engineer. That the engineer did know that the crew to which plaintiff belonged worked on the dock all the time, was established by his own testimony. The instruction required the jury to find that the engineer without giving any warning or signal to notify plaintiff of the approach of his engine, negligently ran the engine in his charge so as to collide with the cars under which plaintiff was working. Certainly the allegation of the petition as to his knowledge of plaintiff's presence on the dock was established and in determining whether he was guilty of negligence in

causing his engine to collide with said cars and forcing them back over plaintiff, the jury were at liberty to consider his knowledge of the danger to plaintiff even though it was not made a condition of plaintiff's recovery in the instruction. Under the general allegation of negligence it was entirely competent to prove such knowledge and the instruction was well enough in view of the evidence and the theory upon which both parties tried the cause.

III. Finally it is insisted that the circuit court erred in not sustaining the demurrer to the evidence at the conclusion of all the evidence.

We deem it unnecessary to recapitulate all the testimony to demonstrate that the evidence sustained the charge of negligence on the part of the engineer in running his engine against the stationary cars behind which plaintiff was working, with his knowledge at the time, without giving plaintiff's crew any warning of his approach. The plaintiff was not a trespasser. He was working at his usual work and place, under the direction of his foreman and along with said foreman and the other members of his crew. That not one of his crew heard the bell or any other warning is attested by the established fact that the foreman, Sollers, was knocked against the guard-rail of the chute, and Woods, another of the gang, was knocked down. That all of this crew of grown men should have neglected a warning in such a perilous position is contrary to all human experience. They each testified they heard none and considering their proximity to the engine some one would have heard it if it had been rung. In such circumstances the argument against negative testimony loses much of its force. The suggestion that the noise made by the "exhaust" of the engine drowned the sound of the bell does not appeal with much force to us, inasmuch as the crew, none of them, heard it, and they were knocked in every direction when the engine struck the cars. Obviously the jury found the engineer did

not ring the bell or give any other warning of his approach. The court was exceedingly liberal to defendants in instructions. There was no error in refusing the demurrer to the evidence.

The judgment of the circuit court must be and is affirmed. *Brace, C. J., Burgess, Valliant, Fox. Lamm,* and *Graves, JJ.,* concur.