SARAH McQUITTY, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeal, June 23, 1917.

1. RAILROADS: Track a Constant Warning: Duty of One Crossing. A railroad track is itself a warning of danger and though an approaching train fail to give other warnings required by positive law or by the facts of the particular case, yet one who without listening or looking, heedlessly attempts to cross such track in front of such negligently operated train, when to look or listen would make known the peril in time to avoid injury, is himself guilty of negligence as a matter of law, contributing to his own injury, and cannot recover damages.

2. ————: Care in Crossing: Right to Rely on Warning Signals. One about to cross a railroad track is not required to use extraordinary care to look and listen for approaching trains and the right to rely on a compliance with the requirements that approaching trains give due warning by bell or whistle is an important factor in determining whether such traveler is guilty of negligence as a matter of law.

3. ————: ————: Exception to General Rule Arising from Use of Particular Tracks. The rule that railroad tracks are signals of danger requiring those about to cross to look and listen for trains approaching, applies only to tracks which are likely to be used at any particular time. Side-tracks and switches may be so restricted in their use as to make it a question for the jury to say whether one about to cross such track had reason to anticipate that a train might be running thereon.

4. ————: Due Care: Presumption: **Action for Death.** Action for death of one whose duties required him to cross and recross many times a spur of defendant railway for which deceased was working. Deceased was crushed by a freight car which was standing on the spur track when such car was bumped by an engine without warning. There was no evidence that deceased did not listen attentively for an approaching engine and in the absence of such evidence the presumption of due care in this respect attended the deceased.

5. — ——: **Death: Due Care: Evidence.** Action for death of employee whose duties required him to cross and recross defendant's spur track many times, such track being used only on rare occasions. Conditions and circumstances examined and deceased considered not negligent in failing to look and listen under circumstances where the presence of defendant's engine could not reasonably have been anticipated.

Appeal from Jasper County Circuit Court.—*Hon. D. E. Blair,* Judge.

AFFIRMED.

*Cyrus Crane* for appellant.

*Robert Sheppard* for respondent.

STURGIS, J.—The plaintiff's husband, at the time he received the injuries causing his death, was both engineer and fireman of a stationary engine used in loading gravel on cars for use on defendant's road. Deceased was in the employ of the gravel company. Th ⸱ gravel plant, located near Noel, Missouri, was reached by a switch about 1000 feet long connected with defendant's main line and extending to and along the bank of Elk River where was located the machinery for loading the gravel into the cars. The hoister, near the river bank, was placed on a concrete foundation seven or eight feet high and the engine for operating same was also located there. The boiler, however, was located on the ground so that the deceased, in passing from the engine to the boiler or *vice versa,* came down, or up, a sh rt flight of steps and then passed over an intervening space of some thirty feet to the front end

of the boiler. This thirty foot space was the length of the concrete foundation forming a wall with the boiler at one end and the steps leading up to the eng'ne and hoister at the other. Across this space from the boiler to the steps and parallel with the concrete wall the deceased passed frequently in the course of his work. A spur track, called the coal track, branched off from the main or gravel switch and extended to and ended at right angles with the concrete wall, striking same at or about the middle of this space between the boiler and steps leading to the engine and hoister. In passing, therefore, from the boiler to the engine or steps leading to same, or *vice versa,* the deceased passed over the end of this spur track where same butted against the concrete foundation wall. Here deceased met his death by being caught and crushed between this wall and a freight car shoved against same on this spur track. The plaintiff recovered judgment for damages and defendant appeals.

The negligence alleged is that the defendant suddenly and without warning shoved a freight car against this wall and caught and crushed the deceased as he was passing along the wall and over the end of the spur track in going from the boiler to the engine. The defense is a denial of the negligence and a plea of contributory negligence in that deceased attempted to pass through the narrow space between the end of the then standing car and the wall without looking or taking heed of the approaching engine.

The first error assigned is that the court should have declared the deceased's conduct in this respect contributory negligence as a matter of law and directed a verdict for the defendant instead of submitting the question of contributory negligence to the jury. The other error relates to the giving of an instruction on contributory negligence. These alleged errors are closely connected and may be considered together.

The evidence favorable to plaintiff shows that this spur track or coal track was not used, except perhaps on rare occasions, to set in gravel cars, but was used

only for cars of merchandise, principally coal, used by the gravel company and on which the gravel company paid freight. Such cars were billed in and out by the defendant's agent at Noel. The gravel cars were handled on the long gravel track by defendant's work train and, as the gravel was used by defendant for ballast, no freight was paid thereon and the local agent had nothing to do with their shipment. This spur track, some 270 feet long from its intersection with the gravel track to its termination at and against the concrete wall, was used only at comparatively infrequent intervals and the cars taken in and out thereon were handled by the local freight crew and engine instead of the work train which handled the gravel cars. The accident in question was caused, however, by the engine of the work train attempting to take out this car of merchandise which had been loaded and billed out by the gravel company. This car had been set in by the local freight some two or three days previous to the accident and was loaded by the gravel company the day previous and billed out for shipment to Joplin on that day. This car was not, however, taken out by the north-bound local freight as was expected by the deceased and others, including the foreman of the gravel company, and that train had gone on north and no train which, in the usual course of events, would handle this car would be there for a considerable time. The deceased made a remark to this effect while eating his noon lunch a short time after the local freight had passed by and shortly before the accident. It is further shown that, the local freight being behind time, the conductor thereof made an arrangement with the crew of the work train to set out this car at a convenient place on the main line to be picked up by the local freight on its next trip. Neither the gravel company nor the deceased had any knowledge of this arrangement. It is not shown whether the deceased knew that the work train was moving gravel cars on the gravel switch or not, as it was so doing only fifteen to twenty minutes before this accident, and some of the other workman observed

it before it came in on this coal track and some did not. In any event the evidence is ample to show that about the time the work train engine started in on this spur track the deceased was at work about the boiler; that the merchandise car in question was standing on the spur track with the end about four feet from the wall; that the work train engine came slightly down grade, without any warning of bell or whistle and with but little or no noise; that it attempted to couple to this standing car and, failing to make a coupling, shoved it against the wall catching deceased as he was attempting to pass through the narrow opening.

It was also shown that there was a coal bin eight or nine feet high built along the spur track only four feet from the rail and some thirty feet long. This coal bin began seventeen feet from the foundation wall and front end of the boiler in line therewith. As the deceased came from the boiler toward the opening between the car and the wall this coal bin obstructed his view toward the coming engine until he reached a point where he could look through the narrow space between the coal bin and the loaded car. This space was less than two feet wide, making allowance for the projection of the car beyond the rail. Though this narrow space was the only place at which deceased, by looking, could have seen the coming engine. There was a curve in the spur track but it is possible and perhaps probable that, had deceased looked through this narrow space, the engine was close enough to the standing car to have been seen before the deceased came into the fatal danger.

The defendant invokes the well known rule of law that a railroad track is itself a warning of danger and, though an approaching train fails to give other warnings required by positive law or the facts of the particular case, yet one who, without listening or looking, heedlessly attempts to cross such track in front of such negligently operated train, when to look or listen would make known the peril in time to avoid injury, is himself guilty of negligence, as a matter of law, contributing to

his own injury and cannot recover damages. · In case of a foot traveler, who has perfect control over his senses and movements, this rule has been applied even though the space where the. view is unobstructed is narrow. [Giardina v. Railroad,.185 Mo. 330, 84 S. W. 928; Farris v. Railroad, 167 Mo. App. 392, 398, 151 S. W. 979; Underwood v. Railroad, 182 Mo. App. 252, 262, 168 S. W. 803.] There is no evidence that deceased did not listen attentively for an approaching engine as he approached the opening between the wall and the standing car. The presumption of due care in this respect attends him and we must presume that the reason he did not hear the coming engine was because no warning noise was being given. [Stotler v. Railroad, 200 Mo. 107, 146, 98 S. W. 509; Webb v. Baldwin, 165 Mo. App. 240, 252, 147 S. W. 849; Hubbard v. Lusk et al., 181 S. W. 1028, 1030.]

We do not find it necessary to place limits on the rule invoked or decide to what extent the law requires that a foot traveler, who uses due diligence as to listening and whose ·vision is obstructed, must, at his peril, look through a narrow opening for a stealthily coming train. We merely remark that there may be a limit to this doctrine, making it a jury question, and to hold otherwise comes dangerously near requiring more than ordinary care, for, as said in Kenney v. Railroad, 105 Mo. 270, 15 S. W. 983; 16 S. W. 837: "He was under no legal obligation to shape his actions on the theory that defendant would disregard the plain requirements of law respecting a signal of its coming train." See, also, what this court said in Underwood v. Railroad, 190 Mo. App. 407, 416, 177 S. W. 724. It was also said in some case, the citation of which is not now at hand, that a traveler, in approaching a railroad track where he has a right to cross, is not expected to do so with the same caution and vigilance as to coming trains that he would for a thief in the night stealthily approaching, intent on taking his life without being discovered.

The reason we need not pass on the point just mentioned is, that the use to which a railroad track is subject is a factor and the court gave the following instruc-

tion, modifying one asked by defendant, by inserting the words in italics and this modificaton constitutes defendant's second assignment of error, to-wit: "The court instructs the jury that it was the duty of the deceased McQuitty before going upon or crossing over the track in question between the end of the standing car and the concrete wall to look and listen for an approaching train or engine, *if under all the facts and circumstances in evidence the presence of a locomotive at work upon said track at that time could reasonably have been anticipated by deceased,* and if you find that by looking where there was an opportunity, if any, to see the engine he could have seen it, or by listening could have heard it, in time to have averted the injury to him and failed to do so, then the said McQuitty was guilty of contributory negligence and plaintiff cannot recover and your verict must be for defendant and this is so even though you may find from the evidence that the engine did not give a reasonable warning of its approach, and even though you may further believe that no one of defendant's employees was sent ahead of the engine to warn persons of its approach."

This instruction is assailed as being destructive of the rule that a railroad track is itself a signal of danger and requires a person about to cross same to look and listen for an approaching train. The instruction, however, does no more than assert an exception to that rule based on the particular facts of the case and the use to which the track is subjected. The authorities announcing this rule are cases dealing with railroad tracks used in the ordinary way for running trains thereon. Certainly it is only *used* tracks, on which the traveler has reason to believe that a train might approach at that particular time, that constitutes a signal of danger. Generally speaking, and so far as the ordinary traveler knows, trains may run on a used track at any time and he has no right to assume the contrary, but there may be exceptions. Here was a spur track used only for putting in and taking out occasional merchandise cars. This was done by the engine and crew of the local

freight. On this occasion the car in question had been billed out by the station agent and the deceased and others were informed that the local freight, arriving shortly before noon, would take it out. Deceased knew that that train had not done so but had gone on north on its regular trip and that no other train handling such a car would arrive for some time. The evidence also justified the finding that the work train, even if deceased knew that it was working on the gravel track, had never been known to handle merchandise cars on this spur track. That train was engaged in an entirely different class of business. Only because of the exceptional arrangement between the two conductors, unknown to deceased or anyone working at the gravel plant, did the work train engine attempt to move this merchandise car. The deceased might be held negligent for not anticipating at that particular time the presence on this track of an engine which, in the method of conducting the business, might probably be there at any time; but, knowing the impossibility of such an engine being there at that time, why should he be held bound to anticipate the presence of another engine which, according to the method of business, never entered on that track.

Side tracks and switches may be set aside for use in a particular way and for a particular purpose and, under the rules and customs adopted, persons may work in or about the same and cross and recross the tracks on which they stand in reliance on such track not being used and the cars thereon not moved, except in accordance with fixed regulations. Repair tracks, loading tracks, tracks or cars protected by the blue flag rule, are examples. In this case the deceased was engaged and probably absorbed in his regular work involving the crossing and recrossing of this spur track. That defendant owed him the duty not to move this car across his path of work without a positive and sufficient warning must be conceded. Since the deceased was rightfully crossing the track at this place and defendant knew he might be so doing, even the local freight owed him this duty. Having ascertained that that train had gone and

no possibility of its moving the car in question, it would be a harsh rule which would forbid the deceased to, in any degree, relax the vigilance required of him with respect to an expected train. Why should he be required to guard against the work train engine doing something which there was no reason to anticipate?

We are not without authorities for so ruling. In Langan v. Railway, 72 Mo. 392, 398, the court held that "Negligence is not imputable to a person for failing to look out for a danger, when, under the surrounding circumstances, the person sought to be charged with it had no reason to suspect that danger was to be apprehended." In Spotts v. Railroad, 111 Mo. 380, 386, 20 S. W. 190, in considering plaintiff's contributory negligence under somewhat similar facts, the court said: "There was nothing to suggest the probability of any such movement of cars in that direction as actually took place. He was not a trespasser. The limited space available as standing room indicates that his taking position where he did, while awaiting the weighing of the empty car on track 8, was a most natural act. But, without repeating facts already mentioned, it is enough to say that we do not consider his action in the premises as justifying a ruling that he was negligent as a matter of law. The jury have found that he was not, as a matter of fact." In Nelson v. Railroad, 132 Mo. App. 687, 695, 112 S. W. 1017, in speaking of a Pullman employee who was injured by being struck by a moving car on a switch track used for storing cars not in use, the court said: "There is no dispute but what it is the duty of a person before he goes upon a railroad track to use due care to avoid danger of injury from passing engines and cars. *In the case under consideration the coach track was not so used by the company.* Its cars and engines did not pass over it in coming and going, nor was it used generally for switching purposes. It was used principally as a place of deposit for cabooses, ice and Pullman cars when not in actual service." This court recognized this principle in Hubbard v. Lusk, et al., 181 S. W. 1028, where deceased was killed in attempting to pass between cars on

a loading switch and there said: "It is true, as so often said, that a railroad track is itself a warning of danger, and one cannot heedlessly step thereon without looking or listening in reliance on those operating trains to give warning of their approach, and this, to a degree at least, applies to switches used infrequently and where trains are run at a slow rate of speed." [See, also, Kame v. Railroad, 254 Mo. 175, 162 S. W. 640; Lanning v. Railroad, 196 Mo. 647, 94 S. W. 491; Gessey v. Railroad, 32 Mo. App. 413.] In the Nelson case, supra, the court further held that one who was working about cars standing on switches and which were not supposed to be moved without giving warning to such workmen, had a right to become absorbed in his work and rely on the presumption that such cars would not be moved without due warning and "He is not compelled to be on the lookout for unusual danger." Gessey v. Railroad, 32 Mo. App. 413, announces this same rule.

After much consideration we are convinced that this case was well and properly tried and the judgment is affirmed. *Cox, P. J.,* and *Farrington, J.,* concur.