FIX FUEL AND MATERIAL COMPANY, a corporation, Appellant,

v.

WABASH RAILROAD COMPANY, a corporation, Appellee.

No. 15647.

United States Court of Appeals Eighth Circuit.

April 11, 1957.

G. W. Marsalek, St. Louis, Mo. (Moser, Marsalek, Carpenter, Cleary Jacckel & Hamilton, St. Louis, Mo., were with him on the brief), for appellant.

Alphonso H. Voorhees, St. Louis, Mo. (Ely, Ely & Voorhees and John L. Davidson, Jr., St. Louis, Mo., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, WOODROUGH, Circuit Judge, and DONOVAN, District Judge.

GARDNER, Chief Judge.

This was an action brought by the Wabash Railroad Company against the Fix Fuel and Material Company to recover on a contract entered into between plaintiff and defendant on April 24, 1942. By this contract the Wabash Railroad Company leased to the Fix Fuel and Material Company the right to construct and operate an unloading pit under one of its team tracks at Jennings, Missouri. The contract contained provision that:

"As a part of the consideration for the grant herein made to it by the Wabash, the lessee hereby agrees to indemnify and save harmless the Wabash against any and all losses, damages, recoveries, costs and expenses for injury to or death of any person or persons whomsoever, or loss or destruction of or damage to any property whatsoever (including both parties hereto and their employees and property), arising from or growing out of, directly or indi-

rectly, the existence, operation, use or maintenance of the said unloading pit, or its removal, unless caused by the sole negligence of the Wabash, its agents, servants or employees."

Pursuant to the terms of the contract the Fix Company in due course constructed the unloading pit and thereafter operated same. There were three substantially parallel tracks extending easterly and westerly. The most northerly of these tracks was the main line track, the next was the passing track and the next was the team track. On October 1, 1952, one Charles Johnson, an employee of the Fix Company, was directing the movement of a coal car which was being spotted for unloading at this unloading pit of the Fix Company. The pit was under the rails of the team track on which the car was being moved and was the pit constructed pursuant to the lease referred to with the Wabash. One of the employees of the Fix Company was "inching" the car along with a pinch bar while another employee was on top of the car for the purpose of setting the brake when signalled to do so by Johnson, who was looking under the car in order to see when the hopper or outlet in the floor of the car was lined up over the unloading pit into which the coal was to be dumped. Johnson was standing close to the passing track. A switch engine manned by a switching crew of the Wabash was pushing two box cars along the passing track at a speed of approximately one mile an hour toward where Johnson was standing. Johnson was struck by the first car, knocked down and suffered serious personal injuries. In a suit brought by Johnson against the Wabash he recovered judgment in the amount of $17,338.11, including interest, against the Wabash, which upon appeal was affirmed. Wabash Railroad Co. v. Johnson, 8 Cir., 211 F.2d 664. Thereafter, the Wabash paid the full amount of the judgment, interest and costs and then brought the instant action under the indemnification provision of the contract, claiming the right to be reimbursed for the expenditures so made by it.

The action was tried to the court without a jury. The court entered findings of fact and conclusions of law determining the issues in favor of the Wabash Company and against the Fix Company. On the question of Johnson's contributory negligence the court found as follows:

"Johnson had worked for the Fix Fuel and Material Company for a number of years and was thoroughly familiar with the physical surroundings pertaining to the area in question where the accident occurred. He was standing, bent over, some 10 or 12 inches from the rail on the passing track, at a time when he knew that switching was going on on the passing track. He last observed the plaintiff's switch engine on the passing track approximately 400 feet away down by the reclamation plant, but paid no attention to it thereafter, despite the fact that he knew that the switch engine went backward and forward over the passing track many times a day. He stated that he was busy looking under the coal car when he was hit, and was not looking in the direction of the passing track at all, but was intent on observing the movement of the coal car while locating it over the unloading pit. He was a little bit hard of hearing, and although he had heard the train bell and other warnings on many occasions, he did not hear them on this occasion.

"Johnson testified that he had on occasions in the past seen the trains moving without warning and had on other occasions while working stepped out of the way of the train when it came along, but on this particular day he was just not looking up and down the passing track, although he was standing within 10 or 12 inches of the passing track rail and knew the train was working on the passing track. If Johnson had looked in the direction from which the engine and cars were approaching he could have

seen their approach and could have gotten out of their way."

On the findings entered the court concluded that:

"The action is based on the contract between plaintiff and defendant which is mentioned in the findings of fact and which was in full force and effect during all times pertinent to the issues of this case. Under the terms of paragraph 4 of that contract plaintiff is entitled to judgment in the present action if that indemnification agreement applied to the accident for which Charles Johnson secured judgment against Wabash Railroad Company and if Johnson's injury did not result from the sole negligence of Wabash Railroad Company, its agents, servants and employees.

"Said agreement refers and applies to injuries 'arising from or growing out of, directly or indirectly, the existence, operation, use or maintenance of said unloading pit,' and the facts disclose clearly that this accident grew directly out of the operation of the unloading pit.

"In view of these facts, this accident was of the type which was in the contemplation of the parties when they drafted the agreement and the indemnification agreement applies to the accident.

"In order for a particular injury to fall within the application or coverage of the indemnification agreement it is not necessary that the injury occur in the unloading pit or on the team track which passes over the pit but it is only necessary that the injury or loss be one 'arising from or growing out of, directly or indirectly, the existence, operation, use or maintenance of said unloading pit.'

"The contract being applicable to the loss caused by the injury of Charles Johnson, plaintiff is entitled to recover if Johnson's injury was not caused by the sole negligence of plaintiff, its agents, servants or employees. If Charles Johnson was guilty of contributory negligence then the injury was not caused by the sole negligence of plaintiff, its agents, servants or employees and plaintiff is entitled to recover.

"The case between Charles Johnson and the Wabash Railroad Company was submitted to the jury under the Missouri Humanitarian Doctrine. Under this doctrine the question of whether or not Johnson was guilty of contributory negligence was not an issue for the jury or the court, for contributory negligence does not bar a recovery under the Missouri Humanitarian Doctrine.

"The testimony of Charles Johnson was the same in his case against the Wabash as it was in the present case and that testimony conclusively shows that he was guilty of contributory negligence, and absent the Missouri Humanitarian Doctrine, in the Court's opinion, Johnson could not have recovered in his case against Wabash. It was Johnson's duty to exercise reasonable care to look out for the cars and engine of the railroad and his failure to do so made him negligent.

"Since the accident was not caused by the sole negligence of plaintiff, the Court accordingly finds that plaintiff is entitled to recover in the present action."

Judgment was accordingly entered.

In seeking reversal defendant contends: (1) that the court erred in concluding, upon the facts as the court found them to be, that Johnson was contributorily negligent, (2) that the trial court erred in finding for the plaintiff because the loss sustained by plaintiff for which recovery was sought in the action was, as a matter of law, caused by the sole negligence of plaintiff and the court erred in finding to the contrary and (3) that the indemnity agreement should be limited in its application to such injuries or damages as may arise out of the use of the team track only.

■ The findings of fact and conclusions of law entered by the trial court make it manifestly clear that in the final analysis the question determined by the trial court was whether or not the accident resulting in Johnson's injuries resulted solely from the negligence of plaintiff railroad company, its agents, servants or employees, and this in turn depends upon whether Johnson was guilty of contributory negligence. Negligence is usually a question of fact to be determined by the trier of the facts, Maryland Cas. Co. v. Independent Metal Products Co., 8 Cir., 203 F.2d 838, but where the facts are undisputed and are of such persuasive character that all reasonable men must reach the same conclusion then the question of negligence may be resolved as a question of law. It will be observed that some of the conclusions of law embody mixed questions of law and fact. They specifically find Johnson guilty of contributory negligence. This finding, though embodied in a conclusion of law, is presumptively correct and will not be disturbed unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. We need not restate the facts which the court held as a matter of law constituted contributory negligence on behalf of Johnson. Manifestly, if the court properly held Johnson to be guilty of contributory negligence then the injury was not caused by the sole negligence of the Wabash Railroad Company, its agents, servants or employees.

■ Under the so-called Missouri humanitarian doctrine contributory negligence was not a defense in the action brought by Johnson against the Wabash Railroad Company. The evidence in that case was substantially the same as the evidence in the instant case and although the question of contributory negligence was not an issue in that case, Wabash Railroad Co. v. Johnson, supra, the action of Johnson manifestly impressed this court as constituting contributory negligence. In the course of the opinion it is said [211 F.2d 665]:

"The plaintiff was entirely familiar with his surroundings and should, no doubt, have exercised greater care than he did for his own safety."

Again, the writer of the opinion said:

"If it were not for the Missouri humanitarian doctrine, in reliance upon and in accordance with which the District Court submitted the case to the jury, the defendant's assertion that the plaintiff's contributory negligence would be fatal to his case might be unanswerable."

■■ While this was not determinative of any of the issues in that case and is not binding on us as a precedent, certainly, in view of the fact that the quoted words voice the considered opinion of this court on facts which are identical to those present in the instant case, they may not be disregarded but are entitled to respectful consideration. Osaka Shosen Kaisha Line v. United States, 300 U.S. 98, 57 S. Ct. 356, 81 L.Ed. 532; Williams v. United States, 289 U.S. 553, 53 S.Ct. 751, 77 L. Ed. 1372; Williams v. Union Pac. R. Co., D.C.Neb., 94 F.Supp. 174. We are in accord with the decision of the trial court that Johnson, under the undisputed evidence, as a matter of law, was guilty of contributory negligence and this being true his injuries did not result *solely* from the negligence of plaintiff, its agents, servants or employees. We have not overlooked the Missouri decisions cited by defendant to the effect that one who is lawfully upon the railroad's premises has a right to become engrossed in his own work and to rely on the duty imposed by law upon the railroad. Doubtless there are circumstances under which this is true, but the cited cases are readily distinguished in their facts from the instant case. They may be classified into two groups. In Gessley v. Missouri Pac. Ry. Co., 32 Mo.App. 413; Hudgens v. St. Louis-S. F. Ry. Co., 139 Mo.App. 44, 119 S.W. 522 and Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S.W.2d 543, the injuries received by plaintiffs arose while they were rightfully inside a box car working at either loading or unloading freight when the car had been placed by the defendant railroad at its location for

the purpose for which it was being used by plaintiffs, with the implied assurance that it would be protected during the loading or unloading processes. The injuries occurred when these cars were collided with and jarred by the defendant railroad while people were working inside them without any notice being given that there would be any movement on the track involved while the work in the car was being done. In Nelson v. Wabash R. Co., 132 Mo.App. 687, 112 S.W. 1017 and McQuitty v. Kansas City Southern Ry. Co., 196 Mo.App. 450, 194 S.W. 888, also relied upon by defendant, men were working on tracks which were seldom, if ever, used in the manner they were at the time of the accidents so that the plaintiffs had no reason to anticipate the movements involved. To contrast the facts in the cited cases with the undisputed facts in the instant case the court found:

"He had worked for the Fix Company for a number of years and was thoroughly familiar with the physical surroundings pertaining to the area in question where the accident occurred. He was standing, bent over, some 10 or 12 inches from the rail on the passing track, at a time when he knew that switching was going on on the passing track. He last observed the plaintiff's switch engine on the passing track approximately 400 feet away down by the reclamation plant, but paid no attention to it thereafter, despite the fact that he knew that the switch engine went backward and forward over the passing track many times a day. * * *

"He testified that he had on occasions in the past seen the trains moving without warning and had on other occasions while working stepped out of the way of the train when it came along, but on this particular day he was just not looking up and down the passing track, although he was standing within 10 or 12 inches of the passing track rail and knew the train was working on the passing track. While there was a duty existing upon the employees of the railroad to look out for Johnson, a like duty was imposed upon Johnson to look out for the cars and engine of the railroad, and failure to do so made him guilty of contributory negligence."

Certainly Johnson in the discharge of his duties was not required to stand ten or twelve inches from the rail of the passing track where, if a car should pass, he was bound to be struck and injured. While he may have had a right to be on the premises of the railroad company he certainly was not impliedly authorized to voluntarily place himself in a position where he was bound to be injured.

It is finally urged by defendant that the indemnity agreement should be limited in its application to such injuries or damages as may arise out of the use of the team track only. The short answer to this would seem to be that by the plain, unambiguous words of the contract it is not so limited. The words of the contract clearly indicate that it was not the intention of the parties to limit liability to such injuries as might occur on the team track. The scope of liability is clearly indicated by the words of the contract providing that the injuries or damages to be covered are those "arising from or growing out of, directly or indirectly, the existence, operation, use or maintenance of said unloading pit, or its removal". In this connection it should be noted that defendant by its answer admitted that the injuries suffered by Charles Johnson directly or indirectly arose from or directly or indirectly grew out of the existence, operation, use or maintenance of the unloading pit. The undisputed evidence sustains this admission in the answer. It certainly grew out of the operation and maintenance of the unloading pit.

We have considered all other contentions urged by defendant and think them wholly without merit. The judgment appealed from is therefore affirmed.