FREDERICK NELSON, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, October 5, 1908.

RAILROADS: Negligence: Licensee: Signal. To a person lawfully upon the track engaged in labor, the railroad company owes a duty of active vigilance, and such person has a right to become engrossed in his labor and rely upon the duty imposed by law for his safety, and cases relating to mere naked licensees are held inapplicable to the case under judgment where the plaintiff was a licensee by invitation and duty and entitled to signals of the movement of engines. [Taylor v. Railway, 86 Mo. 457, distinguished.]

Appeal from Jackson Circuit Court.—*Hon. Edward P. Gates,* Judge.

AFFIRMED.

*J. L. Minnis, Frank P. Sebree* and *John D. Wendorff* for appellant.

(1)   The court committed error, both in not sustaining a demurrer to plaintiff's evidence, and in refusing to instruct the jury at the close of all the evidence to return a verdict for the defendant.   Bennett v. Railroad, 99 S. W. 483; Clancy v. Transit Co., 192 Mo. 615; Holmes v. Railroad, 190 Mo. 104; Engleking v. Railroad, 187 Mo. 164; Giardina v. Railroad, 185 Mo. 334; Boring v. Railroad, 194 Mo. 549; Abbot v. Railroad, 97 S. W. 198; Walker v. Railroad, 193 Mo. 481; Green v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 228; Sims v. Railroad, 116 Mo. App. 579; Mackowik v. Railroad, 94 S. W. 261; McGrath v. Transit Co., 94 S. W. 875; Ayers v. Railroad, 190 Mo. 238; Holwerson v. Railway, 157 Mo. 244; McGauley v. Transit Co., 179 Mo. 590; Theobold v. Transit Co., 191 Mo. 432; Zumault v. Railroad, 175 Mo. 313; Tanner v. Railway, 161 Mo. 497; Sharp v. Railroad, 161 Mo. 234; Feeback v. Railroad, 167 Mo. 216; Carrier v. Railroad, 175 Mo. 481, 486; Evans v. Railroad, 178 Mo. 517; Davis v. Railroad, 159 Mo. 6; Railroad v. Mosley, 57 Fed. 921; Aerkfetz v. Humphreys, 145 U. S. 418; Bell v. Railroad, 72 Mo. 58; Dahlstrom v. Railroad, 96 Mo. 102; Stillson v. Railroad, 67 Mo. 676; Loring v. Railroad, 128 Mo. 356.
(2)   Plaintiff was guilty of contributory negligence which precludes him from recovering against the defendant in this case.   See authorities cited under point I.   (3)   Defendant was not guilty of any negligence. Theobald v. Transit Co., 191 Mo. 432; McGauley v. Transit Co., 179 Mo. 590; Milton v. Railroad, 99 Mo. App. 286; Bell v. Railroad, 72 Mo. 58; Dahlstrom v. Railroad, 96 Mo. 102; Stillson v. Railroad, 67 Mo. 677;

Aerkfctz v. Humphreys, 145 U. S. 420; Loring v. Railroad, 128 Mo. 357.

*Frederick J. Chase* and *William H. Hazel* for respondent.

(1) The defendant was guilty of negligence in suddenly backing the cabooses which had been standing still for twenty minutes, or more, on the track, without giving any warning or signal of their intention to thus move them; or without having any person in a position to signal the engineer when to stop. Lanning v. Railroad, 196 Mo. 647; Railroad v. Elliott, 54 Neb. 299; Gessley v. Railroad, 32 Mo. App. 413; Lovell v. Railroad, 97 S. W. 193; Spotts v. Railroad, 111 Mo. 380; Reed v. Railroad, 107 Mo. App. 238; Railroad v. Shaw, 116 Fed. 621; Copley v. Railroad, 73 Pac. 517; Taylor v. Railroad, 93 Tenn. 305; Railroad v. Potts, 92 Ky. 30. (2) The question of plaintiff's contributory negligence was properly submitted to the jury, under the instructions of the trial court. Hayes v. Railroad, 74 Fed. 279; Gentry v. Railroad, 163 U. S. 353; Erickson v. Railroad, 171 Mo. 647; Reed v. Railroad, 107 Mo. App. 238; Railroad v. Elliott, 54 Neb. 299; Railroad v. Ives, 144 U. S. 408; Peterson v. Transit Co., 114 Mo. App. 374; Schafstette v. Railroad, 175 Mo. 142; Riska v. Depot Co., 180 Mo. 168; Spotts v. Railroad, 111 Mo. 380; Railroad v. Shaw, 116 Fed. 621; Sack v. Car Co., 112 Mo. App. 476; Dickson v. Railroad, 109 Mo. 413; Church v. Railroad, 119 Mo. 203; Railroad v. Stout, 17 Wall. (U. S.) 657.

BROADDUS, P. J.—This is an action by plaintiff to recover damages for personal injuries alleged to have been received through the negligence of the defendant on the 31st day of March, 1905, at Kansas City, Missouri. The plaintiff received his injuries in defend-

132 App—44

ant's yards in said city on one of its switch tracks. These yards are about one-fourth of a mile in length and located just north of St. Louis avenue and east of Santa Fe street and consist of about a dozen parallel railroad tracks running from Santa Fe street east to what are called the Bluffs, and also parallel with St. Louis avenue. The north one of these tracks was used for storing coaches, Pullman cars, ice cars, and cabooses, and was designated as the coach track. Passing over these tracks were the tracks of the elevated railroad company.

The plaintiff was in the employ of the Pullman Car Company as foreman of a small crew of men, whose business it was to clean, repair, and get the Pullman sleeping cars ready for their next trip, and it was also the duty of plaintiff to see that there were no outside causes likely to injure the Pullman cars. He had been employed as such foreman for about one year, but had been in the employ of the Pullman Car Company in and about its cars in said yards for more than a dozen years previously.

A short time prior to the accident, which occurred at about eleven o'clock a. m., the plaintiff started from the west end of the railroad yards to go to the east end of the coach track, at which time he noticed two cabooses standing on the said coach track near to Santa Fe street. He remained there a short time and then turned to go back east, and while he was passing he noticed a telegraph wire lying on and slacked directly across the top of a Pullman car. From his position at the side of the car he was unable to see to what point the wire extended and whether it would be necessary for him to have it removed to avoid injury to the car, and in order to trace the direction of the wire, he walked along the side of the track to a point about twenty feet west of the west end of the car. At this point he looked west, and discovered the two cabooses

standing about one hundred feet away in the same place they had been standing when he noticed them before. He then stepped over on the north rail of the coach track in order to see where the telegraph wire extended. After having located the wire and just as he was turning around he was struck by the east end of one of the cabooses which was being moved by a switch-engine going eastward, and was thrown down and injured. The engine at the time was being moved slowly towards the Pullman cars with the fireman on the south and the engineer on the north side of the engine looking east, the direction they were going. Before the caboose struck plaintiff, a man about one hundred feet north of the track attracted the attention of the engineer by hallowing and waving his hands, whereupon the engineer stopped his engine as quickly as possible, in about the distance of twelve feet, but not until after plaintiff was struck and knocked down. None of the train crew saw plaintiff before he was struck.

Mr. Clifford, who attracted the attention of the engineer as stated, first saw plaintiff on the track about thirty feet west of the elevated road at which time the caboose was about the same distance west of plaintiff. Clifford tried to attract plaintiff's attention by whistling and hallowing at him, but did not succeed in doing so, but plaintiff turned and was proceeding to start across the track without looking toward the caboose. It was also shown that it was not usual to place cabooses on the coach track until in the afternoon, but that sometimes they were placed there in the forenoon.

The vital question in the case is, was plaintiff entitled to recover under the testimony.

The position of the plaintiff is that: "The defendant's engineer was guilty of negligence in suddenly backing the cabooses which had been standing still for twenty minutes or more on the track, without having given any warning or signal of his intention to thus

move them; or without having any person in a position to signal the engineer when to stop." In Lanning v. Railroad, 196 Mo. 647, the facts were; "That the engineer in charge of an engine in the track yards backed cars up an incline of a coal dock striking other cars, from which plaintiff and his crew had emptied their coal into the bins, and caused them to move backward and injure plaintiff while he was using his crowbar as a prize to move said cars out of the way, and forcing said crowbar down on plaintiff. . . ." There was no warning of any kind given. The court held, "that an instruction which permitted plaintiff to recover if the engineer caused the engine to collide with the cars behind which plaintiff was working 'without giving any warning or signal that would be reasonably calculated to notify and warn plaintiff of the approach of said engine,' was not error." "The general rule is that, as to persons lawfully upon the track engaged in labor, the railroad company owes a duty of active vigilance; and such persons have a right to become engrossed in their labor to such an extent that they may be oblivious to the approach of trains, relying, as they may, upon the duty imposed by law with reference to them." [Gessley v. Railroad, 32 Mo. App. 413.] The facts of that case were: the owner was unloading his freight from a car on a side track where it had been placed for that purpose, and while he was so engaged the defendant backed its cars against the car plaintiff was so unloading without giving any warning, whereby he was injured. "A consignee engaged in unloading a car placed on an unloading track is on the railway track by invitation of the company, and he is not compelled to be on the lookout for unusual dangers, but the employees of the company engaged in switching cars on the unloading track must give warning of the approach of the cars." [Lovell v. Railway, 121 Mo. App. 466; 97 S. W. 193.] The holding was similar in Spotts v.

Railway, 111 Mo. 380. The authorities in general are to the same effect, for which reason it is not necessary to cite them.

The appellant contends, however, that the principle has no application to this case, as it relates to instances of persons loading or unloading cars at the invitation of the company or who were so placed that they were unable to look out for their own safety. As plaintiff was not in the employ of defendant, but was merely permitted to go onto the defendant's railroad yards for his own convenience and that of his company, it is argued that he was at most only a licensee, and that as such defendant owed him no duty except not to wilfully or wantonly injure him. It is held that "A railroad company owes no other or greater duty to a naked licensee, exercising the privileges of such in walking on a pathway along the side of the track, than not to negligently or wantonly injure him." The pathway mentioned was generally used by the people in going to church. [Carr v. Railway, 195 Mo. 214.] "One, who enters into a caboose which carries passengers, for the purpose of bearing a lunch to the trainmen, with no intention of becoming a passenger, there being no contract expressed or implied to that effect, and no recognition of him as such, but under a general arrangement between his mother and the conductors to supply them with lunches, with which the company had nothing to do, and under a general direction from the conductor of the particular train to take the lunch into the caboose, is a mere licensee, to whom the railroad owes no other duty than not to negligently or wantonly injure him, since his business was with the trainmen, and not with the company." [Wencker v. Railroad, 169 Mo. 592.]

We think that these two and kindred authorities cited by appellant have no application to the question under consideration. The appellant has failed to make the distinction between a licensee by sufferance and

a licensee by invitation. The authorities last cited apply to the former and not to the latter class of licensees. The plaintiff was in defendant's switch yards not as a naked licensee, or, as stated otherwise, by mere permission or sufferance, but he was there by the invitation of the defendant. The evidence showed that the cars of the Pullman company had been regularly placed upon defendant's tracks for many years, where they were deposited until they were sent out again, from which we may infer that they were there not by mere sufferance but by invitation, presumably by reason of some agreement between the two companies. And we believe we are justified in the inference that these cars were operated by the defendant in its passenger service on its line of railroad; and further that it must have been the understanding that they were left on the coach track under the care and control of the servants of the latter. With this view of the case plaintiff as the employee of the Pullman company was, while engaged in the business of his employer, entitled to the same care as to his safety at the hands of defendant as the law accorded to its own servants.

We are cited to Taylor v. Railway, 86 Mo. 457, as a parallel case. The plaintiff as the wife sued to recover the statutory penalty of five thousand dollars for the death of her husband, whose death was alleged to have been caused by the negligence of defendant. The deceased was in the employ of the Union Railway & Transit Company as a lamp-lighter, whose duty it was to put up lamps in the evening and take them off the targets in the morning, in the St. Louis Union Depot yards which contained thirteen parallel tracks connected by many switches. Deceased was walking on one of the tracks at the time he was struck by an engine and killed. He was not engaged in attending to the lamps at the time, but was going towards his shanty near Fourteenth Street Bridge which crossed said tracks. The engine was

going at the rate of fifteen miles an hour and gave no signal of its approach. There was no evidence that deceased looked or listened for an approaching train. The court held that "One, who recklessly or carelessly goes upon the track of a railroad company, without looking or listening for an approaching train, and is thereby killed, when by looking or listening he would have been apprised of the approach of the train, is guilty of such contributory negligence as to preclude a recovery in an action for his death, notwithstanding the train was, at the time, running at a rate of speed forbidden by an ordinance of the city in which the accident occurred and also failed to ring its bell." There are material distinctions in the two cases. In the Taylor case the deceased went upon the tracks of the railroad company over which the company transacted its business as a carrier, and where he was liable at any time to encounter moving cars, without the necessary precaution of looking or listening for their approach. There is no dispute but what it is the duty of a person before he goes upon a railroad track to use due care to avoid danger of injury from passing engines and cars.

In the case under consideration the coach track was not so used by the company. Its cars and engines did not pass over it in coming and going, nor was it used generally for switching purposes. It was used principally as a place of deposit for cabooses, ice and Pullman cars when not in actual service. The latter were in the care of plaintiff and his gang. He was to see that they were kept clean and in repair, and guarded within and without from injury. In order to a proper performance of his duty it was necessary that he, or some of his gang, should be on or near the track. When it became necessary to move any of these cars, whether in bringing them on or taking them off the track, it was the duty of defendant to give the usual signal or other necessary warning of the intended movement as a proper

precaution for the safety of the persons employed in and about them. These could not always know when such cars would be switched on or off the tracks without previous warning. The case in that respect is more nearly alike to that of Gessley v. Railway, supra, and that of Lovell v. Railway, supra. Undoubtedly, plaintiff at the time he was struck or just a moment before was entirely engrossed in inspecting the telegraph wire that was lying across the car and was wholly unconscious of the approach of the engine and cabooses attached. And while, as said in the Gessley case, that persons engaged in similar employment "are not permitted to close their eyes to what comes in range of their senses, yet they may give their undivided attention to their work and are justified in assuming that the company will not molest them or render their position hazardous without such notice or warning." And, as was held in the Lovell case, a person by invitation of the company on its premises, is not compelled to be on the lookout for unusual dangers. Such seems to be the general rule.

We believe that the plaintiff made out a case, which under the law, as we understand it, justified the verdict and judgment. The action of the court in overruling the defendant's demurrer to plaintiff's case as made out by the evidence is affirmed. Judgment affirmed. All concur.