## BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

## AT THE

## MARCH TERM, 1923.

---

## GEORGE ADOLF, Respondent, v. GEORGE M. BROWN, Appellant.

**St. Louis Court of Appeals. Opinion Filed September 18, 1923.**

1. **NEGLIGENCE: Automobiles: Collision: Ordinances: Speed Ordinance: Construction.** Section 1301, Revised Code of the city of St. Louis, providing that "when turning a corner of intersecting streets, avenues, boulevards or public places, or when traversing a curve or turn in a street, avenue, boulevard, or public place where the view is obstructed, the rate of speed" of automobiles, "shall not be greater than six miles per hour," means that in the operation of automobiles in the city of St. Louis, when turning a corner of intersecting streets, avenues, boulevards or public places, the rate of speed shall not be greater than six miles per hour, whether the view be obstructed or not.

2. **EVIDENCE: Expert Witnesses: Physicians: Statement of Patient to Physician of Prior Condition: Hearsay.** A physician may give in evidence his expert opinion of the condition of his patient, founded on his observation or on the patient's statement of present subjective symptoms, or both, and in giving his opinion, the physician may testify not only of what he observed but what the patient told him about present symptoms, but may not give in evidence statements of the patient with respect to his past physical condition or the circumstances surrounding the injury or the manner in which the injury was received.

3. **APPELLATE PRACTICE: Evidence: Erroneously Admitted: Cumulative: Not Affecting Merits of Action: Harmless.** In an action for

damages for personal injuries, a physician giving in evidence statements of a patient with respect to his past physical condition, when such statements were mere reiteration of facts established by other evidence and not contested or disputed, and tended only in a cumulative manner to prove a fact otherwise established by competent evidence and uncontroverted, the erroneous admission of such evidence is harmless error only, not materially affecting the merits of the action, and therefore falls within section 1513, Revised Statutes 1919.

4. **DAMAGES: Excessive Damages: Brain and Nervous System Permanently Injured: $6225 Not Excessive.** Where plaintiff, a carpenter by trade, thirty-six years old, was injured through the gross negligence of defendant's servant, and was forced to give up his regular work on account of spells of dizziness and fear of falling, and there was an injury to the brain and a probable fracture of the skull at the base of the brain, and a physical lesion in the left motor tract of the brain, and suffered from irritability, sleeplessness, loss of memory, s'owness of speech—slow motor aphasia—and epileptic seizures, resulting from the injury to the brain, and his injury was shown to be permanent and probably progressive, a verdict of $6225 *held* remarkably temperate.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. H. A. Hamilton,* Judge.

AFFIRMED.

*Kelley, Starke & Moser* for appellant.

(1) The court erred in admitting incompetent, irrelevant, immaterial and hearsay evidence, which was highly prejudicial to defendant, given by plaintiff's witness Dr. M. W. Hoge, over the objection of defendant. Mabill v. Boatmen's Bank, 288 Mo. 489; Gibler v. Railroad, 129 Mo. App. 93; Holloway v. Kansas City, 184 Mo. 19. (2) The court erred in overruling each and every one of defendant's motions to strike out incompetent, irrelevant, immaterial and hearsay evidence, which was highly prejudicial to defendant, given by plaintiff's witness Dr. M. W. Hoge, concerning statements alleged to have been made to said witness by plain-

tiff relating to past events, and symptoms, complaints and ailments which plaintiff claimed to have suffered from prior to time of said witness' first examination of plaintiff, and of which the witness had no personal knowledge, or means of knowledge. Magill v. Boatmen's Bank, 288 Mo. 489. (3) The court erred in permitting plaintiff's witness Dr. M. W. Hoge to give an expert opinion concerning plaintiff's condition based upon statements alleged to have been made to said witness by plaintiff relating to past events, and symptoms, complaints and ailments which plaintiff claimed to have suffered prior to the time of said witness' first examination of plaintiff, of which the witness had no personal knowledge, or means of knowledge. Magill v. Boatmen's Bank, 288 Mo. 489. (4) The court erred in giving and reading to the jury Instructions Nos. 1 and 3, given and read to the jury at the instance and request of the plaintiff, because: 1. The amended petition upon which this case was tried alleges a violation of section 1301, Revised Code of St. Louis 1914, as a ground of negligence, but nowhere alleges that the view of plaintiff and defendant's chauffeur of each other was in any way obstructed, but on the contrary alleges specifically that plaintiff was in plain view of defendant's chauffeur. Hence, the alleged violation of said section 1301 could not be made a basis of recovery. Section 1301, Revised Code of St. Louis 1914; Pannell et al. v. Allen, 160 Mo. App. 714. 2. The terms and provisions of section 1301 of the Revised Code of St. Louis 1914, only prohibit the running of automobiles at a rate of speed not greater than six miles per hour "when turning a corner of intersecting streets, avenues, boulevards or public places, or when traversing a curve or turn in the street, avenue, boulevard or public place where the view is obstructed," and said ordinance was not intended to, and does not limit the speed of automobiles when making a turn in the street, etc., nor where, as the evidence in this case shows, both the plaintiff's view of defendant's chauffeur and defendant's chauffeur's view of the plaintiff was unobstructed. Sec. 1301, Revised Code

of St. Louis 1914; Pannell et al. v. Allen, 160 Mo. App. 714. 3. The evidence in this case conclusively shows that plaintiff does not come within the class of persons for whose protection and benefit section 1301, Revised Code of St. Louis 1914, was enacted. Mansfield v. Wagner Electric Mfg. Co., 242 S. W. 400. 4. Said instruction nowhere required the jury to find that the view of plaintiff or defendant's chauffeur of each other was obstructed in any way, and is therefore broader than the provisions of said ordinance. Sec. 1301, Revised Code of St. Louis 1914. 5. Said instruction nowhere required the jury to find that the view of plaintiff or defendant's chauffeur of each other was obstructed in any way, but tells the jury that the mere driving of the automobile in question when turning from Grand avenue into the alley mentioned in the evidence at a rate of speed greater than six miles per hour was negligence as a matter of law. Pannell et al. v. Allen, 160 Mo. App. 714. 6. There is no evidence in this record establishing a causal connection between the alleged violation of this ordinance and plaintiff's alleged injury. Battles v. Railways Co., 178 Mo. App. 596. 7. There is no evidence in this record that the alleged violation of said ordinance was the proximate cause of plaintiff's alleged injury, or that plaintiff's alleged injury would not have occurred even though said automobile had been running at a rate of speed not to exceed six miles per hour. Battles v. Railways Co., 178 Mo. App. 596. (5) The court erred in refusing to give Instruction No. 22, requested by defendant, withdrawing from the consideration of the jury the allegation of negligence, "That the driver of defendant, while turning the corner of Grand Avenue mentioned in the evidence, and the public alley mentioned in evidence, negligently and in violation of the ordinances of the city of St. Louis, ran the automobile mentioned in evidence at a rate of speed greater than six miles per hour. Pannell et al. v. Allen, 160 Mo. App. 714; Russell v. Barcroft, 1 Mo. 473 (side page 663); Higgins v. Railway Co., 197 Mo. 300; Roseman v. United Rys. Co., 197 Mo. App. 337; Allen v. Lumber Co., 171 Mo. App. 482.

*Leonard, Sibley & McRoberts* for respondent.

(1)   (a)   The testimony of Dr. Hoge, "Yes, he complained of headaches," etc., given in response to a question to which objection was made, was proper.   The testimony was of symptoms and complaints present when the doctor made the examinations.   A doctor "may testify about present symptoms and repeat the statements of the patient to him relating to such symptoms." Amick v. K. C., 187 S. W. 582, 584; De Courcy v. Const. Co., 140 Mo. App. 169; Poumeoule v. Post. T. Co., 167 Mo. App. 533; Brady v. Traction Co., 140 Mo. App. 421.   (b) Undoubtedly, at least part of the answer of the doctor was the giving of present symptoms and complaints, and was entirely proper.   Therefore, the motion to strike out all the answer was not well taken, even though part of the answer be thought improper if standing alone. McMahon v. U. Rys., 203 S. W. 500; Dudley v. Railroad, 167 Mo. App. 647; Coombes v. Knowlton, 193 Mo. App. 554 . (c)   The testimony of the doctor was cumulative, undisputed and harmless, at worst.   Its admission was not reversible error, even should the court take the view of the testimony advanced by defendant.   When incompetent or other testimony is admitted on a fact which is proved otherwise by competent testimony, the error is immaterial and is not ground for reversal.   Sec. 1276 and 1513, R. S. 1919; Smiley v. St. L. & Han. Ry., 160 Mo. 629; Scharff v. McGaugh, 205 Mo. 344; Porterfield v. Am. S. Co., 201 Mo. App. 8; Gibbs v. Haughowout, 207 Mo. 384; McMahon v. U. Rys. Co., 203 S. W. 500; Fellhauer v. Q. O. & K. C. Ry., 191 Mo. App. 137; Lindsay v. K. C., 195 Mo. 166; Heinbach v. Heinbach, 274 Mo. 301; Julian v. Calkins, 85 Mo. 202; Tuggle v. St. L. K. C. & N. Ry. Co., 62 Mo. 425; O'Keefe v. U. Rys., 124 Mo. App. 613; Lane v. Lane, 113 Mo. 504; Foster v. Railway, 115 Mo. 182; Fuller v. Robinson, 230 Mo. 22; Adams v. Q. O. & K. C. Ry., 229 S. W. 790.   (2)   (a) The testimony given by Dr. Hoge was mostly, if not en-

tirely, of present symptoms and complaints, and came within the rules laid down by our courts. See cases cited above, point 1 (a). (b) At least part of practically every answer, if not every answer, now assailed, gave present symptoms and complaints, and the respective motions to strike out the whole of each and every answer were therefore too broad and should have been overruled. See cases cited above,.point 1 (b). (c) All the testimony of Dr. Hoge was merely cumulative, undisputed and harmless. Its admission was not reversible eror. See cases cited above, point 1 (c). (d) Defendant made no objection to these answers. He waited until the answer was given and, then finding it unfavorable, moved to strike it out. This was too late, despite the remarks of the trial court. Foster v. Mo. Pac. Ry., 115 Mo. 165; Hickman v. Green, 123 Mo. 165; Budde v. Lamp Co., 193 Mo. App. 151; Burdoin v. Town of Trenton, 116 Mo. 358. (e) All the testimony of Dr. Hoge here assailed was part of the *res gestae* and was admissible. 22 Corpus Juris, pp. 268-69; Coghill v. Q. O. & K. C. Ry. Co., 206 S. W. 912. (3) (a) The opinion formed by Dr. Hoge was not based on history of past events, but on his personal examinations and findings and present symptoms expressed to him. (b) No objection was made; no motion of any kind was made by defendant to strike out testimony which defendant elicited in the cross-examination of Dr. Hoge, and which testimony or opinion defendant claims was based on hearsay evidence. (4) (a) Plaintiff's instructions Nos. 1 and 3 were correct. Defendant misinterprets section 1301, Revised Code St. Louis, 1914. The driver of an automobile must slow down to six miles an hour when turning a corner of intersecting streets, or a street and alley, whether the driver's view is obstructed or not. (b) The question of the construction of section 1301, Revised Code of St. Louis, is academic in this case. Plaintiff's instruction No. 1 on the merits, is in conjunctive form and required the jury to find, before it could

return a verdict for plaintiff, not only that defendant's chauffeur ran the auto at a rate of speed in excess of six miles an hour, but that he also failed to give any signal or alarm while running same at the place in question. To predicate error on this instruction defendant would have to show that both theories left to the jury in the conjunctive form were erroneous. Chambers v. Hines, 208 Mo. App. 222; Jackson v. Railroad, 171 Mo. App. 430; Gibler v. Railroad, 129 Mo. App. 93; Troutman v. E. St. L. C. O. Co., 224 S. W. 1014; Kendrick v. Ryus, 225 Mo. 150.

SUTTON, C.—This is an action for damages for personal injuries to plaintiff, resulting from a collision between the plaintiff's bicycle on which he was riding and the defendant's automobile driven by his negro chauffeur. The casualty occurred between five and six o'clock on May 13, 1920, on the west side of Grand Avenue at the intersection of the avenue with an alley, about 200 feet south of West Pine Boulevard. The south-bound automobile traffic on the avenue was at that time very much congested, the cars frequently moving three abreast. The plaintiff was proceeding southward on the west side of Grand Avenue near the curb, following behind and a little to the west of three automobiles. The chauffeur in charge of defendant's automobile, which was described as a heavy town car about 16 feet in length, was proceeding northward along the east side, but near the center, of the avenue. While the plaintiff on his bicycle was approaching the alley and when he had arrived within a few feet of the intersection of the north line of the alley with the avenue, the chauffeur in charge of defendant's car, having arrived at a point immediately opposite the alley and desiring to pass from the avenue into the alley, made a quick turn and swung the automobile across the avenue at the high rate of speed of fifteen to eighteen miles an hour, passing immediately in front of plaintiff on his bicycle, resulting in a collision

between the car and the bicycle at a point about four feet east of the intersection of the north line of the alley with the west curb of the avenue. The point of contact of the bicycle with the car was near the juncture of the running board with the front fender of the car. The chauffeur testified that when he was on the east side of Grand Avenue he saw plaintiff on his bicycle going southward on the west side of Grand Avenue, but thereafter paid no attention to him and did not see him again until the collision occurred. The weight of the evidence tends to show that at the instant the chauffeur turned and swung the car across Grand Avenue the view was unobstructed between him and the plaintiff, though there was some evidence to the effect that the view was somewhat obstructed by the traffic. The evidence strongly tends to show that the chauffeur gave no signal of any kind when he made the turn, though he testified that he gave the usual signals by extending his hand and sounding the horn. The chauffeur also testified that in making the turn, he slowed down the speed of the car to eight miles per hour, but the weight of the evidence shows that the speed was from fifteen to eighten miles per hour. The evidence showed that the car ran about thirty-five feet after the collision on an upgrade into the alley, though the chauffeur testified that he stopped the car as soon as he could after the collision occurred. The evidence tended to show that the plaintiff in approaching the alley was going from six to eight miles per hour and was looking straight ahead, though there was some evidence to the effect that he was looking down.

When the collision occurred the plaintiff fell unconscious to the street, blood was flowing from his mouth and nose and from ugly gashes in his head and face. He was taken unconscious to the City Hospital and remained unconscious until the next day and was in a mentally confused condition for several days. He remained in the hospital under treatment for about two weeks and was then taken to his home and was under

the treatment of physicians thereafter until the time of the trial. Plaintiff described what he remembered of the collision, in this language: "I saw this colored fellow's face shining through the glass, and then I saw the faces of my father and mother who are dead."

Plaintiff was thirty-six years old at the time of the accident. He was a carpenter by trade. He learned his trade in Germany and was an excellent mechanic. Prior to the accident, he was jovial, a good conversationalist, and enjoyed the society of his friends and acquaintances; he enjoyed life and delighted in his work. After the accident he was low spirited, melancholy, brooded over his afflictions, and wished that he had been killed in the accident that he might be out of his sufferings; he disliked society and wanted to be alone. He recovered sufficiently to return to his work for a while but grew worse and had to give up his regular work on account of spells of dizziness and fear of falling. He suffered with terrible headaches, which he described thus: "It is hard to explain, it is inside of my head, and the effect is like a tear; always tearing; I can't explain it; and then I get, after this tearing, most times or all the time it comes upon me like it was a heavy lump in there, real heavy." The physicians who examined and treated him said there was an injury to the brain and a probable fracture of the skull at the base of the brain, that there was a physical lesion in the left motor tract of the brain, and that there was a slight paralysis of the lower limbs, resulting from the brain injury described. It was shown that the plaintiff suffered from irritability, sleeplessness, loss of memory, slowness of speech—slow motor aphasia—and epileptic seizures, resulting from the injury to the brain. Plaintiff's condition did not improve with the lapse of time, but showed a marked tendency to grow worse.

Under the evidence and the instructions, the jury rendered a verdict in favor of plaintiff, assessing the amount of his recovery at $6,225, and judgment was

given accordingly. After an unavailing motion for a new trial, defendant appealed.

I. The court at the request of the plaintiff instructed the jury that defendant's chauffeur had no right to run the automobile on Grand Avenue at a greater rate of speed than six miles an hour when turning a corner into an intersecting street or alley, and that if he did drive the automobile in question, when turning from Grand Avenue into the alley, at a rate of speed greater than six miles an hour, then this constituted negligence as a matter of law.

The defendant complains of this instruction and insists that it amounts to reversible error.

The determination of the question so raised depends upon the proper construction of section 1301 of the Revised Code of the City of St. Louis produced in evidence, which, so far as it affects the question, is as follows:

"No automobile, . . . shall be moved or propelled along, over or upon any public street, avenue, boulevard, or other public place, at a greater rate of speed than is reasonable, . . . and shall not in any event, while upon any such street, avenue, boulevard, or public place, be moved or propelled at a greater rate of speed than eight miles per hour in the business portions of the city, and not greater than ten miles per hour in the other portions thereof; and when turning a corner of intersecting streets, avenues, boulevards or public places, or when traversing a curve or turn in a street, avenue, boulevard, or public place where the view is obstructed, the rate of speed shall not be greater than six miles per hour."

Section 1294 of said Revised Code enacts:

"The word 'street' includes every avenue, boulevard, highway, cartway, lane, alley, strip, path, square, and place used by or laid out for the use of vehicles."

Defendant contends that a proper construction of section 1301 requires the rate of speed to be reduced to six miles per hour when turning a corner of intersect-

ing streets, only ''where the view is obstructed,'' and for support of this contention defendant relies on the decision of the Springfield Court of Appeals in Pannell v. Allen, 160 Mo. App. l. c. 720, 142 S. W. 482. In that case the court had under construction section 8519, Revised Statutes, 1909, which, so far as it affected the question involved, is as follows:

''No person shall operate a motor vehicle on any public highway at a greater rate of speed than is reasonable, . . . and when turning a corner of intersecting roads or streets, or when traversing a curve or turn in the road or street, where the view is obstructed, the speed shall not be greater than six miles per hour.''

The court construing this statute, answered the contention of counsel that the inhibition of the statute against running faster than six miles an hour applied to all corners whether the view was obstructed or not, and that the qualifying clause ''where the view is obstructed'' applies only to curves and turns in the road, as follows:

''It is clear to us from the grammatical construction of the statute alone that it applies to all alike. Looking to the reason for the statute it is conclusive that it must apply to all. The purpose of the statute is to prevent a person driving an automobile from going around a curve or turn or corner in a road where the view is obstructed at a rate of speed so fast that if he should, on passing around the corner or curve, suddenly discover that he was about to meet some one, he could not stop in time to avoid a collision.''

We think the decision in the Pannell case ought not to control here. The statute under review in that case is quite different, both in its grammatical structure and its purpose from the ordinance here involved. In the statute the clause, ''when turning a corner of intersecting roads or streets,'' is separated by a comma from the clause, ''when traversing a curve or turn in the road or street,'' and this latter clause is separated by a comma

from the qualifying clause, "where the view is obstructed," showing that such qualifying clause has no closer or stronger alliance with the one antecedent clause than the other; whereas, in the ordinance the qualifying clause, "where the view is obstructed," is not separated by a comma from the immediate antecedent clause "when traversing a curve or turn in a street, avenue, boulevard, or public place," showing a peculiarly close association and alliance between the qualifying clause and such immediate antecedent clause and a dissociation from the first antecedent clause, "when turning a corner of intersecting streets, highways, boulevards, or public places."

We think the ordinance, considered from the view point of its grammatical structure alone, clearly means that, in the operation of automobiles in the city of St. Louis, "when turning a corner of intersecting streets, avenues, boulevards, or public places . . . the rate of speed shall not be greater than six miles per hour," whether the view be obstructed or not.

So, too, the scope and purpose of the ordinance here under review clearly distinguishes it from the statute under review in the Pannell case, and instead of militating against our view, lends aid to it. The statute was enacted primarily to meet the needs of the State at large, while the ordinance in question was enacted to meet the exigencies of a populous city. Turning a corner of intersecting streets is very different from traversing a curve or turn in a street. In the one instance the automobile sharply changes its course and runs in a curving movement from one street into another, crossing the current of traffic or the space traversed by pedestrians in passing to and fro between the corners of the streets, or both such current of traffic and space traversed by pedestrians; whereas, in traversing a curve or turn in a street the automobile moves with the current of traffic and does not turn into another street from the street in which it is moving.

Defendant's counsel argues that if the view of the driver is unobstructed when turning a corner, the inhibition of the ordinance against running an automobile at a greater rate of speed than six miles per hour is not intended to apply, because with an unobstructed view the driver could see the situation and would be required to govern his speed according to the circumstances and situation which confronted him. The same argument could be as well leveled against the provision of the same ordinance prohibiting a greater rate of speed than eight miles per hour in the business portion of the city and ten miles per hour in other portions thereof, though the street may be perfectly straight and the view of the driver unobstructed as far ahead as the eye can reach.

## II.

Defendant complains of certain testimony given by plaintiff's physician, detailing statements made by plaintiff to the physician while under his treatment. The rule relating to such testimony as announced and adhered to by the courts in this State is that a physician may give in evidence his expert opinion of the condition of his patient founded on his observation or on the patient's statement of present subjective symptoms, or both, and in giving his opinion the physician may testify not only of what he observed but what the patient told him about present symptoms; but may not give in evidence statements of the patient with respect to his past physical condition or the circumstances surrounding the injury or the manner in which the injury was received. [Magill v. Boatmen's Bank, 288 Mo. l. c. 497, 232 S. W. 448; Lindsay v. Kansas City, 195 Mo. l. c. 181, 93 S. W. 273; Amick v. Kansas City, 187 S. W. (Mo. App.) l. c. 584; Brady v. Traction Co., 140 Mo. App. l. c. 428, 124 S. W 1070; Poumeroule v. Cable Co., 167 Mo. App. l. c. 539, 152 S. W. 114; Fellhauer v. Quincy, Omaha & Kansas City R. Co., 191 Mo. App. l. c. 148, 177 S. W. 795; DeCourcy v. Construction Co., 140 Mo. App. l. c. 179, 120 S. W. 632.]

Dr. Hoge called as a witness for the plaintiff, testified that while under his examination and treatment, plaintiff stated to him that he had been in good health up to the time he was injured; that he was an active man, interested in his work and enjoyed his work; that immediately or very soon after his injury he was unconscious; that he first regained consciousness after reaching the City Hospital but was still mentally confused until the next day; that he was in the hospital for probably two weeks and then went home and was treated by his family physician after that; that since the accident he suffered from headaches and disturbed sleep and as a rule would wake up in the morning feeling unrefreshed; that he was irritable and annoyed and vexed by trivial matters; that he was low spirited and melancholy; that his memory was defective; and that he complained of headaches and dizziness.

It is obvious that much of Dr. Hoge's testimony violates the rule against the admission of the statements of the patient with respect to his past condition and the history of his case.

We have examined the rather voluminous record and find that the statements of the plaintiff testified to by Dr. Hoge were mere reiterations of facts well established by other evidence, and not contested or disputed in the case. It is a well established rule of appellate practice that the erroneous admission of evidence which tends only in a cumulative manner to prove a fact otherwise established by competent evidence and uncontroverted, is harmless error only, which does not materially affect the merits of the action, and therefore falls within both the letter and spirit of our statute. [Section 1513, R. S. 1919; McMahon v. United Railways Co., 203 S. W., l. c. 502; Porterfield v. American Surety Co., 201 Mo. App. l. c. 20-21, 210 S. W. 119; Fellhauer v. Quincy, Omaha & Kansas City R. Co., 191 Mo. App. l. c. 149, 177 S. W. 795; Julian v. Calkins, 85 Mo. l. c. 206; Tuggle v. St. Louis, Kansas City and Northern Ry. Co., 62 Mo.

l. c. 428; O'Keefe v. United Railways Co., 124 Mo. App. l. c. 624, 101 S. W. 1144; Lane v. Lane, 113 Mo. l. c. 507, 21 S. W. 99; Foster v. Mo. Pac. Ry. Co., 115 Mo. l. c. 182, 21 S. W. 916; Fuller v. Robinson, 230 Mo. l. c. 58, 130 S. W. 343; Adams v. Quincy, Omaha & Kansas City R. Co., 229 S. W. l. c. 795.]

Aside from this, the evidence complained of goes solely to the measure of the plaintiff's damages and not to his right of recovery, and in view of the circumstances of the plaintiff's injury, his terrifying experience, his great suffering, and the serious nature of his injuries, shown to be permanent and probably progressive, resulting from the gross negligence of the defendant's servant, the verdict of the jury must be regarded as remarkably temperate, and it is manifest that the admission of the evidence was harmless.

The case was tried without prejudicial error; the verdict was for the right party and should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.