258 S.W.2d 686 (1953)
LESCH
v.
TERMINAL R. R. ASS'N OF ST. LOUIS.
No. 43006.
Supreme Court of Missouri, Division No. 2.
April 13, 1953.
Motion for Rehearing or to Transfer to Denied June 8, 1953.
*688 Warner Fuller, Arnot L. Sheppard, St. Louis, for appellant.
Frank Coffman, E. H. Schwarzenbach, Thomas M. Gioia, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied June 8, 1953.
BOHLING, Commissioner.
Fred J. Lesch, plaintiff, secured a judgment of $30,000 against the Terminal Railroad Association of St. Louis, a corporation, defendant, on account of personal injuries. Defendant appealed and assigns error in the submission of plaintiff's case to the jury, in the giving of plaintiff's main instruction, in the admission of evidence, in the argument of plaintiff's counsel, and contends the judgment is excessive.
Plaintiff was a helper and checker for the Holt Drayage Company, engaged in hauling freight from railroad cars. Defendant had spotted a refrigerator car containing cardboard cartons of canned pineapple for unloading on track 9 at its Tenth Street Team Track in St. Louis. The car was about 40 feet long, 8 feet wide, and 7½ to 8 feet tall, with insulated sides of a thickness of 6 to 8 inches. There was a double door on each side at the center. Each door swings outward and is about 2½ feet wide. Demurrage charges would accrue after forty-eight hours. The cartons were to be distributed to seven dealers. Two hundred cartons had been unloaded from the center of the car on the morning of July 6, 1950, and the door closed.
Plaintiff's employer instructed him to check the freight in the car and to arrange it for unloading. Plaintiff had engaged in this work for eleven years. He was interested in a particular order. He did not notify defendant he was going into the car. Plaintiff entered the car about 1:25 p. m., opening one of the double doors, and latching it against the side of the car. No truck was there for loading. The day was sunshiny. He took his shirt off and placed it, with his cap, glasses and the distribution sheet on a carton on the floor about two or three feet from the door. The cartons were stacked to within three feet of the roof of the car. He used some cartons for steps, climbed to the top, and crawled to the extreme east end of the car where the cartons were a few inches higher, which indicated there were some different sized cartons in the car. When he was within about two feet of the east end, the door slammed shut, making it completely dark in the car. Prior thereto he could see all of the car. He shouted that he was in the car and kicked the side of the car. The car was bumped and he was thrown against its end and side. He felt the car make two stops. He crawled back towards the door. There was a sudden stop when he was near the edge of the cartons "and from that time I was blacked out." He was unconscious for an hour and forty minutes.
Defendant's Rule 795 provided in part: "Cars standing in station train shed or * * * freight cars on team tracks * * * must not be moved until all persons in or about the cars * * * have been given ample warning."
Thomas W. Chappius, plaintiff's witness, was foreman of defendant's switching crew, and had orders which required the moving of the refrigerator car. He was familiar with the above rule. He saw the open door on the south side of the refrigerator car, which indicated to him the car was being loaded or unloaded and people were in the car. He looked in the car, noticed that freight had been removed between the doors and saw freight in each end of the car up to the doorway but did not see plaintiff or his shirt, cap or glasses. The open door gave only a partial light in the car and, in his opinion, it was not sufficient to see a person at the end of the car. He had not been informed and had no idea anyone was in the car. A man inside the car could have heard a warning, but he made no sound and gave no warning that the car was to be moved because he did not see anyone. There was no truck at the car, but he had seen checkers at cars when there was no truck present. He *689 closed the door to keep the freight from falling down on the tracks. The switching took six to eight minutes and included nine starts and stops.
Elmer Hakes, the truck driver who had removed the 200 cartons in the morning, returned to the car about 2:30 p. m. for another load. The car had been moved. He opened the south door and found plaintiff doubled up in the car, near the door, unconscious, with twelve to fourteen cartons around him. He carried plaintiff out. Plaintiff soon regained consciousness. He saw plaintiff's shirt, glasses and distribution sheet by the door. Plaintiff was not able to help him load. He took plaintiff home.
Additional facts will be stated in the course of the opinion.
The only evidence adduced on the merits was offered by plaintiff, who was an invitee, not a trespasser or licensee. Defendant, admitting a duty to exercise ordinary care to warn persons known to be in cars on team tracks of intended movements of the cars, contends the rule is applicable only when the railroad employees have notice, express or implied, that there are persons working in or around the car. Defendant mentions three varieties of notice: express, implied, and constructive; stating that we are not concerned with constructive notice; that there was no evidence of express notice, and that Chappius had implied notice, "if, and only if," he had knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact. Defendant argues due care does not require a switchman, if he looks and sees no one inside a car, to shout a warning to a possible occupant of the car. 66 C.J.S., Notice, §§ 3-7, pp. 637-640; 39 Am.Jur. 238, § 12; Golden v. National Utilities Co., 356 Mo. 84, 201 S.W.2d 292, 297; Weed v. American Car & F. Co., 322 Mo. 137, 14 S.W.2d 652, 655[2-5]. Defendant says Lovell v. Kansas City So. R. Co., 121 Mo.App. 466, 472, 97 S.W. 193, 194, 195, is the closest case on the facts.
Defendant argues that plaintiff is bound by his witness Chappius' testimony that he looked and did not see anything to provoke further investigation, citing Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626, 633[11, 12]. The Draper case is distinguishable from the instant case in that here there are other facts and circumstances of record from which the jury could draw contrary inferences. Smithers v. Barker, 341 Mo. 1017, 111 S.W. 2d 47, 50[2].
The standard of care set by defendant's rule was that "freight cars on team tracks * * * must not be moved until all persons in or about the cars * * * have been given ample warning." Ordinary care is the standard established by law. Witness Chappius testified he was familiar with the rule; the open door indicated the car was being loaded or unloaded and people were in there; the light in the car was insufficient to see a person at the end of the car and he gave no warning; that is, he made no further attempt to ascertain if someone he could not see was in the car. There was two and one-half to three feet of space between the top of the cartons and roof of the car. He had knowledge that checkers were at the cars when trucks were not present. Plaintiff testified he placed his shirt, cap, glasses and distribution sheet on a carton about two or three feet from the door, and the truck driver, when he opened the door and discovered plaintiff on the car floor, saw these articles by the door. The jury could infer and find from the testimony that Chappius, although he looked, negligently looked in that he failed to see what in looking he should have seen and, also, in not further attempting to ascertain if someone were in the car.
Under the evidence there was a duty on defendant to find out and know whether persons were in or about the car before moving it, and in such circumstances negligent ignorance has been considered equivalent to actual knowledge. Knowledge which defendant had or ought to have had is imputed to defendant. Weed v. American Car & F. Co., 322 Mo. 137, 14 S.W.2d 652, 655[3-5]; Crane v. Liberty Foundry Co., 322 Mo. 592, 17 S.W.2d 945, 957[7]; 66 C.J.S., Notice, §§ 3-5, pp. 637-639; 39 Am.Jur. 238, § 12. It was for the jury whether defendant exercised ordinary *690 care or was negligent in moving the car without warning plaintiff. See, among others, Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S.W.2d 543, 554[16-21]; Walsh v. Terminal R. Ass'n, 353 Mo. 458, 182 S.W.2d 607, 608[1]; Carner v. St. Louis-S. F. R. Co., 338 Mo. 257, 89 S.W. 2d 957, 949[1-4]; Lewis v. Terminal R. Ass'n, Mo.App., 61 S.W.2d 234, 236[6]; Nelson v. Wabash R. Co., 132 Mo.App. 687, 692, 112 S.W. 1017, 1018; Hudgens v. St. Louis & S. F. R. Co., 139 Mo.App. 44, 48, 119 S.W. 522, 523. Defendant's case of Lovell v. Kansas City So. R. Co., 121 Mo.App. 466, 471, 97 S.W. 193, 194, 195, is distinguishable in that the injuries were received during the lunch hour. It recognizes a duty to warn in the circumstances of the instant case.
Defendant attacks plaintiff's main instruction on several grounds. After hypothesizing plaintiff's presence in the car, with one of the doors open, for the purpose of checking the remaining freight to facilitate its unloading, the instruction conditioned a recovery upon further findings by the jury, so far as material to the issues presented, as follows: "and that defendant, then, without any notice or warning to plaintiff of its intention to do so, coupled into said car with its engine * * *, and switched it by starting, moving and stopping it with plaintiff therein, if so; and if you further find * * * that defendant knew before it moved and switched said car, if so, or by looking and calling into said car would have discovered that plaintiff was in said car, if he was, but failed to do so; and * * * that defendant would by the exercise of ordinary care (as that term is explained in other instructions) have looked and called into said car, if it did not, and would not have failed to warn plaintiff before switching and moving said car, if it did so fail; and * * * that its said failure to so look and call into said car, if you find it did so fail, and its failure to warn plaintiff before switching and moving said car, if it did so fail, was negligence as that term is explained in other instructions * * *."
Defendant first contends the instruction assumes, although Chappius looked into the car and saw no one, it was his duty to shout a warning at the car door. The instruction predicated plaintiff's recovery on common law negligence; and, as we read it, required findings that in the circumstances in evidence ordinary care required defendant to look and call into the car and the additional finding that the failure to exercise such ordinary care constituted negligence. Under the evidence favorable to plaintiff and the instruction it was for the jury to say whether, if defendant's employee looked into the car and could not see the ends of the car, ordinary care required that he also call into the car. Defendant's cases of Miller v. Busey, Mo. Sup., 186 S.W. 983, 985[1], and Weinel v. Hesse, Mo.App., 174 S.W.2d 903, 907, involved materially different instructions and do not establish error.
Defendant further contends the instruction postulates a finding that Chappius failed to look inside the car, when the testimony of Chappius, plaintiff's witness, that he looked was not contradicted or challenged. We have hereinbefore pointed out that under all the testimony of record plaintiff is not bound by the testimony of Chappius. Taking the evidence favorable to plaintiff and the allowable inferences to be drawn therefrom the jury could find that he did not look in the car, or, if he did, he cursorily and negligently looked. There is evidence to support the submission.
Defendant also contends the instruction is misleading because it emphasizes the alleged failure of Chappius to look and shout a warning, although he had no idea plaintiff was in the car. The instruction did not, as defendant here argues, inform the jury that if Chappius neither looked nor called into the car it was negligence as a matter of law. The instruction required findings that defendant would have discovered plaintiff's presence by looking and calling into the car; that defendant failed to do so; that ordinary care required defendant to look and call into the car, and that such failure constituted negligence as a matter of fact. The instruction differs from the portion of the instruction directed against the act of one of the defendants being unforeseen and unanticipated *691 and criticized in McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135, 139, which instruction was not held prejudicially erroneous on the ground under discussion. Weinel v. Hesse, Mo.App., 174 S.W. 2d 903, 907, considered a refused instruction was fully covered by a given instruction, and thereafter criticized the wording of the instruction although it appears that a like submission was sustained in Asbury v. Fidelity Nat. Bk. & Trs. Co., 231 Mo. App. 437, 443, 100 S.W.2d 946, 950[14]. The jury was required to find the facts submitted in the instant instruction and it is not subject to the criticism mentioned in the cases cited by defendant.
Defendant, on the cross-examination of plaintiff, developed that plaintiff did not notify defendant's employees that he was going into the car. On redirect examination he was asked why he did not. Defendant's objection that it made no difference why he did not notify them was overruled, and plaintiff answered to the following effect: After a car is spotted for unloading they start unloading if a truck is there and, if not, they work inside the car to see what freight is there and arrange it for unloading because the freight is not "put together in the car, and that is our custom, and everyone else that works in the yard, we have men in the car sorting out stuff that wasn't in the truck there." Upon objection, the court struck out "the last part of the answer" as not responsive. Plaintiff, over objection, further explained his answer: "We never go down there and notify anybody because it [the car] is set on the team track for the unloading. We have to sign for it." On recross-examination he stated he did not know "of his own knowledge" the uniform, universal custom of other drayage companies with respect to notifying defendant. The court evidently struck plaintiff's testimony with respect to "custom" from his first answer because the question did not specifically mention custom. Courts may on redirect examination permit witnesses to explain answers given on cross-examination although the reason for the answer be immaterial. Johnson v. Minihan, 355 Mo. 1208, 200 S.W.2d 334, 336[1-4]; 70 C.J. 698, §§ 852, 856, 857; 58 Am.Jur. 314, § 562. The ruling was proper.
While Dr. Anthony A. Piekarski, plaintiff's physician, was on the stand, counsel asked him what history plaintiff gave him, what happened to plaintiff. The court interposed: "What the plaintiff complained of"; and plaintiff's counsel followed with: "What did he say about the accident?" Defendant was objecting on the ground the inquiry sought hearsay testimony. The witness answered: "The only thing I inquired about, and I asked him what had happened, whether he had a blow, or a fall, or anything, and he said he was on top of a load in a refrigerator car and the car was jarred and he was thrown from the top of the load and lost his memory at that particular time."
Counsel's question appears to have been too broad. The court was endeavoring to keep the question within proper bounds. Some inquiry by the physician of a patient as to the cause may be proper for intelligent treatment. Coghill v. Quincy, O. & K. C. R. Co., Mo.App., 206 S.W. 912, 913 [4]; Albert v. Krey Packing Co., Mo.App., 195 S.W.2d 891, 894[6]. This, however, does not extend to a narrative of the facts attending the injury. Evans v. Missouri Pac. R. Co., 342 Mo. 420, 116 S.W.2d 8, 11; Baumhoer v. McLaughlin, Mo.App., 205 S.W.2d 274, 280[4-7]; Murphy v. S. S. Kresge Co., Mo.App., 239 S.W. 2d 573, 582[7]; 31 C.J.S., Evidence, § 246, p. 994. The objectionable portion of the instant answer did not cover any fact that had not been established theretofore by competent evidence and was of facts not contested or disputed in the case. That the answer embraced hearsay testimony was harmless in the circumstances. Section 512.160 RSMo 1949, V.A.M.S.; Fellhauer v. Quincy, O. & K. C. R. Co., 191 Mo.App. 137, 177 S.W. 795, 799[8]; Adolf v. Brown, 213 Mo.App. 406, 255 S.W. 947, 950[3]; Hamm v. Chicago, B. & Q. R. Co., 211 Mo. App. 460, 245 S.W. 1109, 1114[9]; Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W.2d 135, 145[12-14].
Defendant contends plaintiff's testimony that he was not able to work and *692 was unable to lift packages weighing forty pounds was objectionable for stating a conclusion. Plaintiff says defendant did not object to the first question and defendant's motion to strike came too late. Birmingham Drainage District v. Chicago, M. & St. P. R. Co., 266 Mo. 60, 71, 178 S.W. 893, 897[16]; Doherty v. St. Luis Butter Co., 339 Mo. 996, 98 S.W.2d 742, 747[8, 9]; Robertson v. Energy Const. Co., Mo.App., 294 S.W. 426, 428[5, 6]. In other cases similar situations have been considered not reversible error. Dean v. Wabash R. Co., 229 Mo. 425, 448(VIII), 129 S.W. 953, 960 (8); Looff v. Kansas City Oil Co., Mo., 246 S.W. 578, 580[4]; Berlau v. Metropolitan Life Ins. Co., 224 Mo.App. 938, 24 S.W. 2d 686, 692[11]; Patterson v. Springfield Traction Co., 178 Mo.App. 250, 261, 163 S.W. 955, 958[7]; 32 C.J.S., Evidence, § 467, p. 107.
Defendant complains of plaintiff's counsel stating in the argument, referring to plaintiff's witness Chappius, defendant's employee, "If he did look, I don't know whether he looked or not, he said he did" and "I believe anyone, if they actually looked in there to see inside that car, would have seen those things [referring to plaintiff's shirt et cetera on the carton near the door]" on the ground plaintiff may not repudiate his own witness. As hereinbefore stated there was other evidence in the case permitting of the above inferences.
Our statement of the facts discloses that defendant's point that plaintiff did not establish a proximal causal connection between defendant's negligence and his claimed physical condition is without merit. Defendant's answer admits plaintiff received some injury at the time. Dr. Piekarski testified, as developed hereinafter, that plaintiff sustained injuries attributable to fractures and not to arthritis.
Defendant's real complaint is that the damages are excessive. The jury returned a verdict for $45,000. A remittitur of $15,000 was entered in the trial court. Is the judgment for $30,000 excessive for the injuries established of record?
Dr. Piekarski saw plaintiff on July 7, 1950, the day following the injury. Plaintiff was complaining of a severe headache and dizziness, and had tenderness over the lower posterior portion of his neck, over the sixth and seventh cervical vertebrae. He did not respond to treatment and was sent to Dr. H. R. Berland for X-rays on July 26th. Additional X-rays were taken on January 3, 1951. Plaintiff had received from Dr. Piekarski infrared heat treatments twice weekly, forty-five minutes each, and medicine for the relief of pain up to the time of trial, November, 1951. Dr. Piekarski testified that the treatments would have to be continued for an indefinite period; that the X-rays disclosed compressed or compacted fractures of plaintiff's sixth and seventh cervical vertebrae, with new bone formation between the sixth and seventh and above the sixth cervical vertebrae, causing ankylosis or stiffening of the neck, which will not improve, is permanent and probably will be progressive; and that plaintiff is unable to turn his head and will never be able to engage in heavy manual labor. His total bill was $715.
Dr. Berland, plaintiff's witness who specialized in radiology, stated the X-rays disclosed compressed fractures of the sixth and seventh vertebrae; that the fractures had healed; and that plaintiff had an arthritic condition, causing stiffness, extending from the third cervical to the fifth lumbar vertebra, all the way down the back, which he attributed to plaintiff getting old.
Plaintiff testified he never had any pain in his back and did not recall ever hurting his neck prior to the instant injury. Since the injury he has had constant pain in his back, close to his shoulders. He still has headaches. His neck is stiff. If he turns his head too far, his neck snaps and there is a sharp pain which seems to settle over his eyes and causes a headache and dizziness. Plaintiff has not worked since his injury.
On this issue defendant stresses Osburn v. Kansas City So. R. Co., 360 Mo. 813, 230 S.W.2d 856, 861. The plaintiff cites Miller v. Brunson Const. Co., Mo.Sup., 250 S.W.2d 958, 963; Abernathy v. St. Louis-S. F. R. Co., Mo.Sup., 237 S.W.2d 161, 165; Pinter v. Gulf, M. & O. R. Co., 362 *693 Mo. 887, 245 S.W.2d 88, 93; Cruce v. Gulf, M. & O. R. Co., 361 Mo. 1138, 238 S.W.2d 674, 681.
After reviewing the above authorities and others, we conclude that in the exercise of a sound discretion $25,000 is the maximum recovery that should be permitted to stand under the evidence favorable to plaintiff. If plaintiff will within fifteen days enter a remittitur in the sum of $5,000 the judgment will be affirmed for $25,000 as of the date of the verdict; otherwise the judgment will be reversed and the cause remanded. It is so ordered.
WESTHUES and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.
All concur.
On Motion for Rehearing or to Transfer
PER CURIAM.
In its motion for rehearing or to transfer, defendant again stresses the case of Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626. Lesch, the instant plaintiff, was an invitee and perhaps the original opinion should have expressly stated in connection with the Draper case that Draper was not an invitee to whom that defendant owed a duty of lookout at the place where he was injured. 156 S.W.2d loc. cit. 632[9, 10]. Draper failed to make a case on the invitee theory. Id., 156 S.W. 2d loc. cit. 633.
The other issues presented on original submission, repeated in defendant's motion, including the issue that the damages were excessive, are sufficiently covered in the opinion.
The motion is overruled.